UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FILED

CASE NO:

2011 OCT 25  PM 1: 37

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

OCCUPY FORT MYERS, CINDY
BANYAI, STEPHANIE DARST,
CHRISTOPHER FAULKNER, F. FRANK
GUBASTA, ZACHARY KUHN, HILARY
MAINS, MATT MCDOWELL, MICHELLE
MEYER, LUIS OSPINA, RYAN POGUE,
FRANK PRATT, MARLENE ROBINSON,
and JUSTIN VALO,

                    Plaintiffs,

2:11-cv-608-FtM-29DNF

v.

CITY OF FORT MYERS,

                    Defendant.

_____/

## VERIFIED COMPLAINT

### (With Injunctive Relief Sought)

The **PLAINTIFFS** hereby commence this civil action, seeking declaratory relief, injunctive relief, and compensatory damages, for ongoing and threatened violation of the First Amendment rights of individuals and an unincorporated association seeking to engage in peaceful expressive conduct within the City of Fort Myers, Florida.

### JURISDICTION AND VENUE

1. This action seeks declaratory relief, injunctive relief and compensatory damages pursuant to 42 U.S.C. §1983, for ongoing and threatened injury to the First Amendment rights of individuals and an unincorporated association engaged in lawful expressive activity within the City of Fort Myers,

Florida. This Court accordingly has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 as claims arising under the U.S. Constitution, and pursuant to 28 U.S.C. § 1343 (a), as a civil action to redress the deprivation of civil rights and privileges secured by the U.S. Constitution. Further, this court has jurisdiction over Plaintiffs' claims for declaratory relief in accordance with the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

2. Venue is proper in the Middle District of Florida - Fort Myers Division, under 28 U.S.C. §1391(b) (1), insofar as defendant City of Fort Myers is located in Lee County, Florida, and is thereby wholly located within the above-referenced judicial district.

## INTRODUCTION

3. The set of Plaintiffs is comprised of thirteen (13) persons who are active in Southwest Florida in bringing awareness of social and economic justice issues through demonstrations, marches, and rallies, and related expressive speech and conduct, and one (1) unincorporated association whose members are concerned about current political, social and economic issues, including those arising locally, nationally and globally. In the instant civil action, the Plaintiffs challenge several provisions of the City of Fort Myers' Municipal Code ("**Fort Myers Code**" or "**Code**"). The City of Fort Myers (hereinafter also "Fort Myers" or "defendant City") employs a permit scheme, for expressive activity in traditional public fora, that is violative of constitutional safeguards as an unlawful prior restraint, because it is content-based, overbroad, vague, and it suffers from additional infirmities. The permit scheme requires a "written permit from the chief of police" for every "parade, procession . . . or public open-air meeting." The ordinance lacks sufficient standards in multiple instances, to guide the decision of whether and under what conditions a permit will issue, to ensure that public officials must decide whether to issue or deny a permit in sufficient time to actually stage the event, and what conditions may be imposed on expressive activities. The absence of adequate standards in key areas means that the ordinance vests public officials with unbridled discretion and invites content-based decisions based on the nature of the speaker. These are forbidden grounds on which

to base a permit scheme that requires a license to engage in protected speech; the permit scheme violates Plaintiffs' First Amendment rights by impermissibly limiting their rights to speech, association, and assembly. Furthermore, the Fort Myers allows City officials to accommodate "athletic sporting events, or cultural or civic events" after public park closing hours, but allows no provision for accommodation of those who are participating in First Amendment-protected activity. This ordinance is content-based on its face and illustrates a governmental policy of preference for non-political speech. For these reasons, defendant City of Fort Myers must be enjoined from prohibiting the lawful exercise of First Amendment-protected activity. Further, the Plaintiffs seek a declaration that the City's "Park Operating Policy" is facially invalid as violative of protected expressive conduct, and seeks damages for the wrongful abrogation of protected free speech, association and assembly.

## PARTIES

### Plaintiffs

4. Plaintiff **OCCUPY FORT MYERS** ("alternately "OFM") is an unincorporated association of individuals, mostly from Lee County, Florida and surrounding areas, who a re concerned about the direction of our country and who have gathered spontaneously to bring visibility to the influence of private money into the nation's political process. [Declaration of Justin Valo, dated October 22, 2011, hereinafter "Valo Decl.," at ¶ 3, attached hereto as Exhibit 1]. A core purpose of OFM is to bring awareness to the concerns about the U.S. political process and economic policy through symbolic, around-the-clock, peaceful protests referred to as "occupations." [Valo Decl., at ¶ 3]. OFM held their first rally and march on October 15, and began occupying Centennial Park in Fort Myers that evening. [Valo Decl. at ¶ 5].

5. Plaintiff **CINDY BANYAI** is a resident of Lee County, Florida. Plaintiff Banyai received a citation in the amount of $135.00 while involved in symbolic First Amendment-protected speech on the evening of October 20, 2011. [Citation No. 1B25781]. Plaintiff is asserting her personal

constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

6. Plaintiff **STEPHANIE DARST** is a resident of Lee County, Florida. Plaintiff Darst received two citations in the amount of $135.00 each while involved in symbolic First Amendment-protected speech on the morning of October 22, 2011. [Citation No. 1B23023 and 1B23022]. Plaintiff is asserting her personal constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

7. Plaintiff **CHRISTOPHER FAULKNER** is a resident of Lee County, Florida [Declaration of Christopher Faulkner, dated October 23, 2011, hereinafter "Faulkner Decl.," at ¶2, attached hereto as Exhibit 2]. Plaintiff Faulkner received two citations in the amount of $135.00 each while involved in symbolic First Amendment-protected speech on the evening of October 20, 2011 [Faulkner Decl. at ¶ 6]. Plaintiff Faulkner has received multiple citations since October, 20, for a total of eight, each in the amount of $135.00. Plaintiff Faulkner fears the ordinances and policies of the City of Fort Myers will inhibit the exercise of his free speech [Faulkner Decl. at ¶8].

8.    Plaintiff **F. FRANK GUBASTA** is a resident of Lee County, Florida. Plaintiff Gubasta received two citations in the amount of $135.00 each while involved in symbolic First Amendment-protected speech on the evening of October 21, 2011 and again on the morning of October 22, 2011. [Citation No. 1B26251, 1B18250]. Plaintiff is asserting his personal constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

9. Plaintiff **ZACHARY KUHN** is a resident of Lee County, Florida. Plaintiff Kuhn received a citation in the amount of $135.00 while involved in symbolic First Amendment-protected speech on the evening of October 20, 2011. [Citation No.1B24948]. Plaintiff is asserting his personal constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

10. Plaintiff **HILARY MAINS** is a resident of Lee County, Florida. Plaintiff Mains received a citation in the amount of $135.00 while involved in symbolic First Amendment-protected speech on

the evening of October 20, 2011. [Citation No. 1B25878]. Plaintiff is asserting his personal constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

11.  Plaintiff **MATT MCDOWELL** is a resident of Colliler County, Florida. [Declaration of Matt McDowell, dated October 24, 2011, hereinafter "McDowell Decl.," at ¶2, attached hereto as Exhibit 3].  Plaintiff McDowell received a citation in the amount of $135.00 while involved in symbolic First Amendment-protected speech, including participating as a citizen journalist, on the morning of October 22, 2011 [McDowell Decl. at ¶ 6]. Plaintiff McDowell fears the ordinances and policies of the City of Fort Myers will inhibit the exercise of his free speech [McDowell Decl. at ¶8].

12.  Plaintiff **MICHELLE N. MEYER** is a resident of Lee County, Florida. Plaintiff Meyer received a citation in the amount of $135.00 while involved in symbolic First Amendment-protected speech on the evening of October 20, 2011. [Citation No. 1B24226]. Plaintiff is asserting her personal constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

13.  Plaintiff **LUIS OSPINA** is a resident of Lee County, Florida [Declaration of Luis Ospina, dated October 23, 2011, hereinafter "Ospina Decl.," at ¶2, attached hereto as Exhibit 4].  Plaintiff Ospina received a citation in the amount of $135.00 while involved in symbolic First Amendment-protected speech on the evening of October 20, 2011 [Ospina Decl. at ¶ 6]. Plaintiff Ospina fears the ordinances and policies of the City of Fort Myers will inhibit the exercise of his free speech [Ospina Decl. at ¶8].

14.  Plaintiff **RYAN POGUE** is a resident of Lee County, Florida. Plaintiff Pogue received two citations in the amount of $135.00 each while involved in symbolic First Amendment-protected speech on the evening of October 22, 2011. [Citation No. 1B23090, 1B23097]. Plaintiff is asserting his personal constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

15.  Plaintiff **FRANK PRATT** is a resident of Lee County, Florida. Plaintiff Pratt received a citation in the amount of $135.00 while involved in symbolic First Amendment-protected speech on the evening of October 20, 2011. [Citation No. 1B24949]. Plaintiff is asserting his personal constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

16.  Plaintiff **MARLENE ROBINSON** is a resident of Lee County, Florida. Plaintiff Robinson received two citations in the amount of $135.00 each while involved in symbolic First Amendment-protected speech on the evening of October 22, 2011. [Citation No. 1B25061, 1B25060]. Plaintiff is asserting her personal constitutional right to engage in free speech, assembly and association within the confines of the City of Fort Myers.

17.  Plaintiff **JUSTIN VALO** is a resident of Lee County, Florida [Valo Decl., at ¶2]. Plaintiff Valo participates in ongoing demonstration activities, and assists in the organization of OFM's activities. [Valo Decl., at ¶3]. Plaintiff Valo asserts that unconstitutional ordinances being enforced by the City of Fort Myers have hindered and chilled his speech, the speech of all those who associate with OFM and all who may have wanted to associate with OFM in the future. [Valo Decl., at ¶16].

**Defendant**

18.  Defendant **CITY OF FORT MYERS** is a body corporate and politic, with the capacity to sue and be sued.  The City of Fort Myers is the legal entity responsible for the actions of its final policymaker for city policies, the Fort Myers City Council.  As such, defendant City is responsible for the passage of City Code Sec. 2-271 to 2-273, Sec. 58-151 to 58-157, and Sec. 78-1 to 78-3 by the City Council, and for the implementation of that city law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

19. Plaintiffs seek to exercise their First Amendment rights to demonstrate in Centennial Park, public property located in Fort Myers, Florida, in an attempt to bring visibility to the insidious influence of money into the U.S. political process, and to inform members of the general public on political issues such as social justice and economic equality.

**Interaction Between Event Organizers and City of Fort Myers Officials**

20. On or about October 11, 2011, Mark Hetrick, who volunteered his services as a member of the OFM Legal Working Team, called the Fort Myers Police Department ("FMPD") to inquire about obtaining a permit for a planned OFM rally and march in downtown Fort Myers on Oct. 15, 2011. [Valo Decl., at ¶6].

21. FMPD indicated that OFM could rally and march downtown on Oct. 15th, provided that OFM submit to certain restrictions. Specifically, OFM could not: use a megaphone, march in the street, or include "vulgar language" on signs. [Valo Decl., at ¶6].

22. Mr. Hetrick further inquired about OFM's intentions to symbolically "occupy" Centennial Park beginning on the evening of Oct. 15, 2011. An FMPD contact said that the police would not interfere with any overnight "occupation," including allowing the erection of tents, as long as there was no alcohol brought into the park. The FMPD advised OFM to contact the City of Fort Myers Recreation Division to obtain a permit for the overnight occupation. [Valo Decl., at ¶6].

23. On October 15, 2011, OFM held a noon rally at Centennial Park, and then conducted an approximately one mile-long march from Centennial Park to the Bank of America branch on First Street, and then back to Centennial Park. Approximately 500 people showed up to support the Occupy Fort Myers movement. The march and rally remained peaceful and respectful. [Valo Decl., at ¶6].

24.    OFM began "occupying" Centennial Park on the evening of October 15th. The General Assembly of OFM, comprised of the entire gathering of persons engaged in a group decision-making process, agreed that the "occupiers" would respect the City and park by making sure that the participants maintained quiet after park closing hours, and by thoroughly cleaning up after themselves. The occupiers had no confrontations with members of the public, the City or FMPD from Oct. 15th through Oct. 20th. [Valo Decl., at ¶9]. The "occupiers" did continue their political activity by engaging in awareness-building with an information booth for questions for the general public set up at the entranceway of the encampment, print and television media, by displaying political signs, and through the symbolic presence of tents. [Faulkner Decl., at ¶ 3; *see also* digital photographs of the OFM encampment area, attached hereto as Exhibit 5].

25. On October 18, 2011, OFM obtained a "Special Events" pamphlet from the City, enclosed within it was a permitting scheme and a permit application. The "Special Events" pamphlet states that "[t]he Special Events Advisory Board may have final approval of all events as detailed in City Ordiance #3019." OFM completed a permit application, and submitted it to the Recreation Division. OFM informed the Recreation Division, along with Officer Sanchez of the FMPD, through email communication that Occupy Fort Myers sought to cooperate with the City. [Valo Decl., at ¶10].

26.    On October 19, 2011, at 10:19 a.m., Kelly MacDonald, Senior Program Coordinator in the Recreation Division informed OFM, through email, that, before the Special Event Committee could even review the permit application, OFM would need to obtain a $1 million liability insurance policy and bring the Liability Insurance certificate to the Recreation Administrative Office. Ms. MacDonald informed OFM that the City was prepared to enforce Ordinance Sec. 58-153(3) if OFM did not comply with the liability insurance by 3:00 p.m. on the same day. [Valo Decl., at ¶10].

27.    On October 19, 2011, Mark Hetrick contacted Ms. MacDonald by email and phone to let her know that OFM could not possibly comply with the 3:00 p.m. deadline to obtain an insurance policy. The City gave OFM the names of three insurance companies, and Ms. MacDonald agreed to allow

OFM an additional day to attempt to obtain insurance and thereby comply with City regulations. [Valo Decl., at ¶10].

28.   On Oct. 19, 2011, OFM informed the City of Fort Myers Recreation Division and Police Department, through email, that the insurance companies designated by the City of Fort Myers would not provide the requested liability insurance policy to OFM. OFM informed Ms. MacDonald, Mr. Saeed Kazemi, the Public Works Director, and Officer Sanchez of the FMPD, through email, that OFM sought understanding and cooperation with the City, that the group would like to obtain a permit, but OFM could not satisfy the City's requirements. OFM asked that the City not attempt to dismantle OFM presence in Centennial Park. [Valo Decl., at ¶11].

29. Even if an insurer would agree to insure OFM, OFM has absolutely no funds with which to pay for a liability insurance policy and, it was conveyed by City personnel that the City of Fort Myers would require OFM to apply for another permit and obtain a re-issuance or new insurance policy every ten days. [Valo Decl., at ¶14]. OFM sought to review the procedures for requesting a waiver of the liability insurance requirement or for appeal of the denial of a permit, but there were no provisions for either to be found in either the City of Fort Myers ordinances or the Special Events pamphlet. [Valo Decl., at ¶12].

30. On October 20, 2011, members of OFM and their legal counsel spent most of the day attempting to negotiate, in good faith, with City employees in an attempt to obtain a permit for the ongoing symbolic demonstration. The City would not issue OFM a permit, nor would the City identify any procedure for requesting either waiver or appeal of the City's decision. [Valo Decl., at ¶15].

31. On the evening of October 20, at approximately 10:45 p.m., members of the FMPD showed up at Centennial Park and issued citations of $135 each to any individual who was planning on remaining in the park after 10:30 p.m. [Valo Decl., at ¶15; Faulkner Decl., at ¶6; Ospina Decl., at ¶6].

32.  On the morning of October 22, 2011, FMPD law enforcement officers arrived at OFM encampment area at approximately 6:15 a.m. and demanded the OFM occupiers to leave the park and remove their tents. [McDowell Decl., at ¶6].

33.  Humana, the insurance corporation, was sponsoring an Alzheimer's Awareness event in Centennial Park on Saturday, October 22. FMPD Captain Viola informed OFM occupiers that Humana rented "the entire park," and that he didn't wish for OFM members to leave the park completely until noon. When Capt. Viola was further questioned by OFM members, he informed OFM that the Humana representatives did not want the tents in the park during their event. The occupiers who were present each received a citation in the amount of $135 for being in the park after closing hours, even though Humana representatives were also in the park before 6:30 a.m. The occupiers who were present each received a citation in the amount of $135 for being in the park after closing hours, even though Humana representatives were also in the park before 6:30 a.m. [McDowell Decl., at ¶6].

34.  As a direct and proximate cause of the unconstitutional City ordinances, Plaintiffs have suffered damages, which include violation of their civil rights, limitation of their core political message to those who may be interested in participating in OFM events but whose speech has been chilled, and economic damages, in the nature of the value of the lost publicity, the value of volunteer staff time to adjust events and notify persons as to governmental harassment, the cost of transportation and related costs to attempt to comply with City demands, costs of litigation, and related expenses.


**City of Fort Myers Ordinances**[1]

***Provision of the Special Events Advisory Board Ordinance, Sec. 2-273.***

35.  The law, entitled "Powers and Duties," is a sweeping set of provisions vesting specific powers within the Special Advisory Board, as follows:

---

[1]. Copies of the Challenged City Code sections are attached hereto as Exhibit 6.

"The special events advisory board shall:

(1) Act in an advisory capacity to the city council in matters relating to special events proposed by event managers, which are (a) Open to the public; (b) held within the city limits in spaces that are overseen by the city; © Expected to attract more than 1,000 people; **and** (d) Requesting the city council approve a waiver or a reduction of fees or a cash sponsorship.

. . .

(3) Recommend to the city council special events that should receive city sponsorship by a reduction or waiver in the fees charged for the use of public property and/or the cost of services to be provided by the city, based on a weighted scale of merit;

(4) Recommend regulations for the conduct of special events that will increase interest therein to the citizens, residents and visitors of the city generally . . . ."


***Provision of the Park Operating Policy, Sec. 58.***

36. Sec. 58-153, entitled "Recreational activity restrictions," and Sec. 58-154, entitled "Prohibited Behavior," impose impermissibly vague restrictions on symbolic speech and expressive activity, as follows:

58-153 "No unauthorized person in a park shall: (3) Set up tents, shacks, or any other temporary shelters for the purpose of overnight camping. No person shall live in a park beyond closing hours in any movable structure or special vehicle to be used or that could be used for such camping purpose, such as a tent, house-trailer, camp-trailer, camp-wagon or the like."

58-154 "No unauthorized person in the park shall do any of the following: (6) Loitering and boisterousness. Sleep or protractedly lounge on the seats, benches, or other areas, or engage in loud, boisterous, threatening, abusive, insulting or indecent language, or engage in any disorderly conduct or behavior tending to a breach of the public peace."

37. Sec. 58-156, entitled "Park Operating Policy," is a content-based restriction on symbolic speech and expressive activity, as follows:

"(a) *Hours*. . . Normal park hours are 6:00 a.m. to 10:30 p.m. unless posted otherwise by the recreation manager. Such hours **shall** be deemed extended by the recreation manager as necessary to accommodate athletic sport events, or cultural or civic activities."

38. Sec. 58-157, entitled "Violations; Penalties" states, as follows:

"A violation of this division will subject the violator to a find of not less than $25.00 and not more than $250.00. Such violators may be issued appropriate citations by city policy officers."

### Provision of the Parades and Processions Ordinance, Sec. 86.

39. Sec. 86, entitled "Parades and Processions," is a content-based law that has three subsections that outline a permitting scheme without specific factors or guidelines and vests unbridled discretion in the Chief of Police, as follows:

86-153 "(a) No parade or procession upon any street of the city, and no open-air public meeting upon any public property shall be permitted unless a special permit shall first be obtained. Any person desiring a permit under this section shall make written application to the chief of police or some duly authorized member of the police department. Permits issued under this section shall be printed or written, duly signed by the chief of police or some duly authorized member of the police department after approval, and shall specify the day, hour, place and purpose of such parade, procession or open-air public meeting. (b) The fee for such permit shall be $5.00 if the activity permitted requires no extra policing or will cause no extra cost or expense to the city. If such activity will require additional policing or supervision, or otherwise incur additional cost and expense to the city, there shall be charged such fee as will defray such additional cost to be determined by the chief of police. 86-154 "If the chief of police knows or has reasonable grounds to believe that to permit any parade, procession or open-air meeting under this article may or will result in violence, fighting, disturbance of the peace, or injuries to persons or damage to property, he may refuse to approve issuance of a permit hereunder by endorsing on the application or indicating in writing to the city clerk his reason for his refusal and such permit shall not be issued."

**Application of City Code to OFM Events**

40. The City of Fort Myers required OFM to obtain a "special events" permit for their expressive conduct of "occupying" Fort Myers, even though OFM's demonstration does not fall within the definitional parameters of a "special event," especially since there was never any expectation that more than 1,000 would join the overnight encampment. Because the City arbitrarily subjected OFM to the special events requirements, OFM was subjected to restrictive permit requirements not suitable for small, spontaneous First Amendment-protected activity. Furthermore, since OFM was subjected to special events provisions, which are reviewed by the Special Events Advisory Board, City Code Sec. 2-273 allows the Board complete control, without defined appellate procedures, as to whether or not to entertain the waiver of any provisions.

41. The City of Fort Myers has issued citations to members of OFM for violations of City Code 58-153. However, the Code prohibits the erection of tents for the "purpose of overnight camping." The application provision constitutes viewpoint discrimination, and clearly, OFM is not erecting tents for the "purpose of overnight camping." The presence of both OFM-affiliated persons and the tents is in furtherance of their fundamental message of dissatisfaction with the political status quo in this nation. OFM is subject to the provisions of Sec. 58-154. This code is impermissibly vague since OFM would not be aware of what constitutes "boisterousness" or "protracted lounging." Sec. 58-154 also divests members of OFM of a liberty interest by penalizing lounging in the park. The City of Fort Myers has issued citations to members of OFM for violations of City Code 58-156. This section of the City Code is clearly content-based viewpoint discrimination as it shows a policy of preference for non-political speech. The Recreation Manager also has unbridled discretion to extend park hours for sporting, cultural or civic events, but not for First Amendment-protected activity.

42. The FMPD allowed OFM to rally and march, pursuant to City Code 86-153, provided OFM agree to certain ad hoc restrictions. These restrictions reflect city policies vesting unbridled discretion in the Fort Myers Police Department and has an impermissible or, more accurately, an ethereal

permitting scheme. Because any "open air meeting" is subject to the provisions of this code, OFM members are divested of an important liberty interest.

## CAUSES OF ACTION

43. As to each cause of action delineated below in Counts One, Two, Three, and Four, the plaintiffs advance their federal constitutional claims against the City of Fort Myers in the City's capacity as a state actor, through the operation of the Fourteenth Amendment.

## COUNT ONE
### *Monell* Claim - Official Policy to Suppress Protected Speech and Assembly
### (42 U.S.C. § 1983 - Violation of First Amendment - Viewpoint Discrimination)
### Fort Myers City Code, Sec. 2-273 and Sec. 58-156
### By ALL PLAINTIFFS Against CITY OF FORT MYERS

44. Plaintiffs reallege and incorporate each jurisdictional and factual allegation of Paragraphs 1-43, as if set forth at length herein.

45. At all times relevant hereto, the City Council of defendant City of Fort Myers ("Council") was the final policymaker for the City of Fort Myers, for the purpose of adopting ordinances and other policies regulating constitutionally-protected speech, expressive conduct, and assembly within the boundaries of the City.

46. The Council enacted Ordinance No. 3019, codified as Code Sec. 2-271 to Sec. 2-273 referenced as the "Special Events Advisory Board" Ordinance, precluding OFM's demonstration event without first obtaining a permit, to be reviewed and recommended by the Special Advisory Board members defined in Sec. 2-271 and 2-272. This ordinance is unconstitutional on its face as an impermissible prior restraint, containing terms which provide for targeted regulation of core political speech while allowing unbridled discretion in the Board to provide exemption of permit requirements for commercial speech.

47. The Council enacted Ordinance 1991, §12-219, now codified as City Code Sec. 58-156 referenced as the "Park Regulations" Ordinance, precluding OFM's demonstration event after park closing hours, defined as 10:30 p.m. to 6:30 a.m. This ordinance is unconstitutional on its face as an impermissible prior restraint, containing terms which provide for targeted regulation of core political speech while allowing the Recreation Manager to make accommodations by extending park hours for sporting, cultural or civil events.

48. As a content-based regulatory scheme, Code 2-273 is subject to strict scrutiny, mandating that the defendant City establish that its regulatory scheme is (1) **narrowly-tailored**, and (2) serving a **compelling state interest**. The broad prohibitions against politically-centered speech and conduct, the application of the permit schemes to small groups such as OFM, the provision that allows for recommendation of a waiver or reduction of permitting fees, or even a City cash sponsorship, for preferred commercial speech, the failure to provide for spontaneous speech events, the failure to have fee exemptions for indigent applicants, the lack of an appeals process, and other factors preclude a finding that the ordinance scheme is narrowly-tailored.  The content-based ordinance cannot be fairly said to serve any compelling state interest.

49. As a content-based prohibition, Code 58-156 is subject to strict scrutiny, mandating that the defendant City establish that it be (1) **narrowly-tailored**, and (2) serving a **compelling state interest**. The broad prohibitions against politically-centered speech and conduct, while allowing for the accommodation for preferred non-political speech, preclude a finding that the ordinance scheme is narrowly-tailored.   The content-based ordinance cannot be said to serve any compelling state interest.

50.  The use of Code 58-156 by Defendant has chilled the First Amendment-protected activities of the plaintiffs, has and may continue to cause the citation of members of the plaintiffs, as well as others similarly situated who wish to exercise their rights of free speech, assembly and association.

51.  The adoption by the Fort Myers City Council of the aforementioned ordinances, and the present and future implementation of the ordinances, constitute the proximate causation of the deprivation of the First Amendment rights of the Plaintiffs and other demonstrators for the ongoing events in Centennial Park, and other imminently-scheduled events within the City of Fort Myers.  The Plaintiffs seek redress for these violations of the First Amendment through the operation of 42 U.S.C. § 1983.

**COUNT TWO**
***Monell* Claim - Official Policy to Suppress Protected Speech and Assembly**
**(42 U.S.C. § 1983 - Violation of First Amendment - Overbreath)**
**Fort Myers City Code, Sec. 2-273, 58-156 and 86-153**
**By ALL PLAINTIFFS Against CITY OF FORT MYERS**

52.  Plaintiffs reallege and incorporate each jurisdictional and factual allegation of Paragraphs 1-43, as if set forth at length herein.

53.  At all times relevant hereto, the City Council of defendant City of Fort Myers ("Council") was the final policymaker for the City of Fort Myers, for the purpose of adopting ordinances and other policies regulating constitutionally-protected speech, expressive conduct, and assembly within the boundaries of the City.

54.  The Council enacted Ordinance No. 3019, codified as Code Sec. 2-271 to Sec. 2-273 referenced as the "Special Events Advisory Board" Ordinance, precluding OFM's demonstration event without first obtaining a permit, to be reviewed and recommended by the Special Advisory Board members defined in Sec. 2-271 and 2-272. This ordinance is unconstitutional on its face as an impermissible prior restraint, containing terms which provide for targeted regulation of core political speech while allowing unbridled discretion in the Board to provide exemption of permit requirements for commercial speech.

55.  As a content-based regulatory scheme, Code 2-273 is subject to strict scrutiny, mandating that the defendant City establish that its regulatory scheme is (1) **narrowly-tailored**, and (2) serving a

**compelling state interest**.  The broad prohibitions against politically-centered speech and conduct, the application of the permit schemes to small groups such as OFM, the provision that allows for recommendation of a waiver or reduction of permitting fees, or even a City cash sponsorship, for preferred commercial speech, the failure to provide for spontaneous speech events, the failure to have fee exemptions for indigent applicants, the lack of an appeals process, and other factors preclude a finding that the ordinance scheme is narrowly-tailored.   The content-based ordinance cannot be fairly said to serve any compelling state interest.

55. The Council enacted Ordinance 1991, §§17-117–17-118, now codified as Sec. 86-153, referenced as the "Parades and Processions" Ordinance, precluding OFM's rallies and marches without first seeking issuance a permit, to be reviewed and by the Chief of Police of the FMPD, or his designee. This ordinance is unconstitutional on its face as an impermissible prior restraint, containing terms which provide for targeted regulation of core political speech while allowing unbridled discretion in the Chief of Police to show preference of non-political speech.

56. As a content-based regulatory scheme, Code 86-153 is subject to strict scrutiny, mandating that the defendant City establish that its regulatory scheme is (1) **narrowly-tailored**, and (2) serving a **compelling state interest**.  The unbridled discretion vested in the Chief of Police, or a designee, without guidelines for issuing a permit, time limitations on review, guidelines for the imposition of restrictions or requirements, the failure to provide for spontaneous speech, and other factors preclude a finding that the ordinance scheme is narrowly-tailored.   The content-based ordinance cannot be said to serve any compelling state interest.

57. The Council enacted Ordinance 1991, §12-219, now codified as City Code Sec. 58-156 referenced as the "Park Regulations" Ordinance, precluding OFM's demonstration event after park closing hours, defined as 10:30 p.m. to 6:30 a.m. This ordinance is unconstitutional on its face as an impermissible prior restraint, vesting unbridled discretion in the Recreation Manager to make accommodations by extending park hours for sporting, cultural or civil events.

58. As a content-based prohibition, Code 58-156 is subject to strict scrutiny, mandating that the defendant City establish that it be (1) **narrowly-tailored**, and (2) serving a **compelling state interest**. The provision vesting unbridled discretion in the Recreation Manager to make accommodations for certain groups, but not for political speech, preclude a finding that the ordinance scheme is narrowly-tailored. The content-based ordinance cannot be said to serve any compelling state interest.

60. The adoption by the Fort Myers City Council of these Codes, and the present and future implementation of the ordinances by Defendant, constitute the proximate causation of the deprivation of the First Amendment rights of the Plaintiffs and other demonstrators for the ongoing events in Centennial Park, and in other public parks, streets or sidewalks in the City. The Plaintiffs seek redress for these violations of the First Amendment through the operation of 42 U.S.C. § 1983.

### COUNT THREE
*Monell* Claim - Official Policy to Suppress Protected Speech and Assembly
(42 USC § 1983 – Violation of Fourteenth Amendment - Vagueness)
Fort Myers City Code, Sec. 58-153 and Sec. 58-154
By ALL PLAINTIFFS Against CITY OF FORT MYERS

61. Plaintiffs reallege and incorporate each jurisdictional and factual allegation of Paragraphs 1-43, as if set forth at length herein.

62. At all times relevant hereto, the City Council of defendant City of Fort Myers ("Council") was the final policymaker for the City of Fort Myers, for the purpose of adopting ordinances and other policies regulating constitutionally-protected speech, expressive conduct, and assembly within the boundaries of the City.

63. The Council enacted Ordiance 1991, §§12-216–12-217, now codified as City Code Sec. 58-153 and 58-154, referenced as the "Park Regulations" Ordinance, subjecting OFM to a regulatory scheme that is impermissibly vague, is unconstitutional on its face. First, this ordinance fails to provide the kind of notice that enables ordinary citizens to understand what precise conduct it

prohibits; second, it authorizes arbitrary and discriminatory enforcement through its lack of precision.

64.    The use of this code by Defendant has chilled the First Amendment-protected activities of the plaintiffs, has and will continue to cause the issuance citations to the plaintiffs, and others similarly situated who wish to exercise their rights of free speech, assembly and association.


### COUNT FOUR
*Monell* Claim - Official Policy to Suppress Protected Speech and Assembly
(42 USC § 1983 – Violation of Fourteenth Amendment - Liberty Interest)
Fort Myers City Code, Sec. Sec. 58-154 and Sec. 86-153
By ALL PLAINTIFFS Against CITY OF FORT MYERS

65. Plaintiffs reallege and incorporate each jurisdictional and factual allegation of Paragraphs 1-43, as if set forth at length herein.

66.  At all times relevant hereto, the City Council of defendant City of Fort Myers ("Council") was the final policymaker for the City of Fort Myers, for the purpose of adopting ordinances and other policies regulating constitutionally-protected speech, expressive conduct, and assembly within the boundaries of the City.

67.  The Council enacted Ordiance 1991, §§12-216–12-217, now codified as City Code 58-154, referenced as the "Park Regulations" Ordinance, subjecting OFM to a regulatory scheme that prohibits "protracted lounging" in City parks is unconstitutional on its face, as a prohibition that has a substantial impact on conduct protected by the Due Process Clause of the Fourteenth Amendment, as members of OFM have a significant liberty interest in lounging on public benches and public places according to their inclination.

68. The Council enacted Ordinance 1991, §§17-117–17-118, now codified as Sec. 86-153, referenced as the "Parades and Processions" Ordinance, subjecting OFM to a regulatory scheme that is unconstitutional on its face, as a prohibition that has a substantial impact on conduct

protected by the Due Process Clause of the Fourteenth Amendment, as members of OFM have a significant liberty interest in "meeting" with others in "open air" within City limits.

69.      The use of these codes by Defendant has chilled the First Amendment-protected activities of the plaintiffs, has and will continue to cause the issuance citations to the plaintiffs, and others similarly situated who wish to exercise their rights of free speech, assembly and association.

## PRAYER FOR RELIEF - ALL COUNTS

WHEREFORE, Plaintiffs seek judgment against defendant City of Fort Myers for the following relief:

1.  A preliminary and permanent injunction, enjoining defendant City of Fort Myers, its officers, employees and agents, from enforcing the Fort Myers City Ordinances challenged in this complaint;

2.  A declaration that defendant City of Fort Myers's challenged Ordinances violate Plaintiffs' rights to free speech, assembly and association, under the First Amendment;

3.  Compensatory Damages;

4.  Costs of suit pursuant to 42 U.S.C. § 1920 and 42 U.S.C. § 1988;

5.  Attorneys' Fees pursuant to 42 U.S.C. § 1988;

6.  Such other relief as this Court deems just and proper.

DATED: October 25, 2011

Jennifer Lucas Keesler
Fla. Bar No. 67374
Attorney for Plaintiffs
1136 NE Pine Island Rd., Ste 77
Cape Coral, FL 33909
239.240.5057
jennifer@keeslerlaw.com

## VERIFICATION

I, JUSTIN VALO, declare:

1. I am a volunteer organizer for Occupy Fort Myers.  I submitted a declaration in support of the Emergency Motion for Preliminary Injunction, and in support of the facts set forth in this Verified Complaint.

2. I have read the Verified Complaint in this action and am familiar with the factual matters set forth in the pleading.  I verify that these facts are true and correct.

3. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.


Executed on October 25, 2011 in Fort Myers, Florida.

_____

JUSTIN VALO