FILED

UNITED STATES DISTRICT COURT  OCT 25 PM 1:38
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

CASE NO:

OCCUPY FORT MYERS, CINDY
BANYAI, STEPHANIE DARST,
CHRISTOPHER FAULKNER, F. FRANK
GUBASTA, ZACHARY KUHN, HILARY
MAINS, MATT MCDOWELL, MICHELLE
MEYER, LUIS OSPINA, RYAN POGUE,
FRANK PRATT, MARLENE ROBINSON,
and JUSTIN VALO,

2:11-cv-608-FtM-29DNF

Plaintiffs,

v.

CITY OF FORT MYERS,

Defendant.
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER
AND MOTION FOR PRELIMINARY INJUNCTION**

JENNIFER L. KEELSER
    Of Counsel & On the Brief
ROBERT W. ROSS, JR.
    On the Brief

1

## INTRODUCTION

This litigation centers on the effort by the Plaintiffs, an unincorporated association and individuals involved in economic reform and social justice and other political activities, to enjoy the full spectrum of their First Amendment-protected rights within the geographic confines of the City of Fort Myers, Florida. In October, 2011, Defendant City of Fort Myers (hereinafter also referred to as "Fort Myers" or "City") began enforcing a series of City Code provisions which severely circumscribed politically-oriented speech, assembly and association within the city.

The political demonstration activities previously planned or organized by the Plaintiffs, including symbolic occupation, parades, marches and rallies, in the public parks and on the public streets and sidewalks of Fort Myers, constitute forms of First Amendment-protected activity characterized by the U.S. Supreme Court as an exercise of rights "in their most pristine and classic form." *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963). In the early 1980s, Justice Stevens noted that "[t]his court has recognized that expression on public issues 'has always rested on the highest rung of First Amendment values,'" *NAACP v. Claiborne Hardware*, 458 U.S. 886, 913 (1982)(*quoting Carey v. Brown* 447 U.S. 455, 467 (1980)). Further, with respect to expressive conduct on public streets, sidewalks and parks, it is axiomatic to assert that "[i]n such places, which occupy a 'special position in terms of First Amendment protection,' *United States v. Grace*, 461 U.S. 171, 180 (1983), the government's ability to restrict expressive activity 'is very limited,' *id.* at 177." *Boos v. Barry*, 485 U.S. 312, 318

(1988); *see Keating v. City of Miami*, 598 F.3d 753, 766-67 (11th Cir. 2010) (protesters have a clearly established right to assemble, protest and demonstrate peacefully on public property).

## SCOPE OF REVIEW

The permit scheme of the City of Fort Myers by its' express terms restricts speech on public streets and sidewalks, and in public parks which are "traditional public fora that for 'time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Boos*, 485 U.S. at 318, *quoting Hague v. CIO*, 307 U.S. 496, 515 (1939). Defendant's permit scheme requires prior approval before a demonstration, parade or rally takes place on public property, and therefore constitutes a **prior restraint** on free speech, association and assembly. *See Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1250 (11th Cir. 2004), *citing United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000)(noting "a prior restraint of expression exists when the government can deny access to a forum before the expression occurs"). There is a **strong presumption against the constitutionality of prior restraints** of First Amendment-protected speech. *Frandsen*, 212 F.3d at 1237.[1]

In determining the level of scrutiny that this tribunal must utilize in assessing the constitutionality of Fort Myers' "Special Advisory Board," "Park Operating Policy," and "Parades and Processions" Ordinances, this court must first "inquire whether the Ordinance is

---

[1] This is so because a "[p]rior restraint upon speech suppresses the precise freedom which the First Amendment sought to protect against abridgement." *Carroll v. Princess Anne*, 393 U.S. 175, 181 (1968).

content-neutral." *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1258 (11th Cir. 2005), *quoting Burk*, 365 F.3d at 1251. If content-neutral, then the ordinance is subject to **intermediate scrutiny**. *Solantic*, 410 F.3d at 1258. If the ordinance is found to be content-based, however, it is subject to **strict scrutiny**, and can only survive if "it constitutes the least restrictive means of advancing a compelling government interest." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1269 (11th Cir. 2006).

## STANDING

United States district courts are empowered to resolve disputes involving "all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States." U.S. CONST., Art. III, § 2. A critical element in determining a justiciable case or controversy is the matter of standing. *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1212, 1223 (11th Cir. 2004). "In order to demonstrate it has standing a party must show: '1) an injury in fact or an invasion of a legally protected interest, 2) a direct causal relationship between the injury and the challenged action; and 3) a likelihood of redressability.'" *Miami for Peace, Inc. v. Miami-Dade County*, 2008 WL 3163383, *5 (S.D. Fla. 2008), quoting *Midrash*, 366 F.3d at 1223.

Additionally, the requirements for standing are relaxed for facial challenges to ordinances which are predicated on the grounds of *overbreadth*. *Bischoff v. Osceola County*, 222 F.3d 874, 883 (11th Cir. 2000). The **overbreadth doctrine** invalidates laws that inhibit the free exercise of

First Amendment-protected activities. *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).[2]

In the instant matter, the **individual plaintiffs** claim **standing** insofar as they assert an injury based on the violation of their personal constitutional right to engage in protected speech, assembly and association, by the operation of Fort Myers' "Special Events Advisory Board," "Park Operating Policy," and "Parades and Processions" Ordinances, and additional injury evinced by the monetary losses engendered by efforts to comply with the defendant's overreacing permit scheme; there is established by the plaintiffs' testimony (in filed declarations) a causal link between the defendant's scheme and the injuries sustained by the plaintiffs; finally, a grant of declaratory and equitable relief to preclude injury *in futuro*, along with an award of compensatory damages for past injury, will satisfactorily redress the plaintiffs' injuries. *See Miami for Peace*, at *5. Plaintiffs also have standing because of the risk of a chilling effect on the protected expression of others not before the Court. Under this well-established exception to Article III standing, challenges may be made to "laws that are written so broadly that they may inhibit the constitutionally protected speech of third parties." *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984).

As to the **organizational plaintiff**, it asserts **standing** by advancing claims analogous to those of the individual plaintiffs (violation of right to freely assemble and associate / losses cause by compliance with permit scheme / causal link); additionally, however, they also seek relief on behalf of their membership for the abrogation of cherished First Amendment freedoms, predicated on the doctrine of "associational standing," which has roots going back over a half-

---

[2] An ordinance is overbroad "in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129-130 (1992)(internal citations omitted).

century. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958) (as an organization advancing political and social equality goals of its membership, the NAACP "and its members are in every practical sense identical"). In 1977 the Supreme Court delineated a three-part test to analyze claims of associational standing: (1) members of the group would otherwise have standing to sue in their own right; (2) the interests in the litigation are germane to the organization's purpose; (3) the participation of individual members is not required. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977).[3] The organizational plaintiffs submit that the declarations submitted on their behalf demonstrate that they easily meet the tripartite standard.

## FACTUAL BACKGROUND

The facts relevant to this application are set forth in the Verified Complaint and in, the declarations appended as exhibits to the Verified Complaint.

## LEGAL ARGUMENT

In the instant application, filed pursuant to *Fed.R.Civ.P.* 65, the Plaintiffs seek an initial determination as to the issues of equitable relief and declaratory relief for the claims brought in the Verified Complaint, for the reasons delineated hereinbelow.

---

[3] The associational standing test was more recently reaffirmed a decade ago by the Supremem Court in *Friends of the Earth, Inc. v. Laidlaw Env. Services (TOC), Inc.*, 528 U.S. 167, 181 (2000), and then by the Eleventh Circuit in 2008 in a voting rights challenge advanced by the NAACP. *See Florida NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008).

**POINT 1 - DEFENDANT'S ORDINANCE SECTIONS CONTROLLING POLITICAL DEMONSTRATIONS AND SYMBOLIC CONDUCT COMPRISE A CONTENT-BASED, DISCRIMINATORY PERMIT SCHEME**

"A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *Frandsen*, 212 F.3d at 1236-37. The provision in M-D County Code § 30-274 that requires prior approval or notification before a march can occur places a prior restraint on free speech. There is a strong presumption against the constitutionality of prior restraints on free speech. *Bourgeois v. Peters*, 387 F.3d 1303, 1319 (11th Cir. 2004). This is so because a "[p]rior restraint upon speech suppresses the precise freedom which the First Amendment sought to protect against abridgment." *Carroll v. Pres. & Commissioners of Princess Anne*, 393 U.S. 175, 181 (1968). Ordinances that place a prior restraint on speech by requiring "before-the-fact permitting and licensing schemes" to the point that they create "an impermissible risk of suppression of ideas" will be found to be unconstitutionally overbroad. *Forsyth County*, 505 U.S. at 129.

A prior restraint must contain basic procedural safeguards to ensure that protected expression is not inhibited. At a minimum, it must allow for prompt judicial review in the event the permit is denied or unduly burdened. *Freedman v. Maryland*, 380 U.S. 51, 58-59 (1965). *See also Forsyth County*, 505 U.S. at 123. "Meaningful judicial review is the touchstone of the [prior restraint] test. 'Prompt judicial review must be available to correct erroneous denials of access to expression.'" *Bourgeois*, 387 F.3d at 1319-20. Because it lacks any time for deciding a permit application, the County's Code misses the mark completely. *See Redner v. Dean*, 29 F.3d 1495, 1502 (11th Cir. 1994) ("ordinance . . . inadequate under any interpretation of 'prompt

judicial review' because it creates the risk that expressive activity could be suppressed indefinitely prior to any judicial review of the decision to deny a license").

Defendant City of Fort Myers's "permit scheme" is comprised of numerous ordinance provisions that serve to engage in constitutionally-impermissible *viewpoint discrimination*, through content-based regulations that burden both First Amendment-protected events and the individuals seeking to lawfully participate in those events.

### A. The Impermissible Content-Based Targeting of Political Events by Burdening Such Gatherings with the Requirement of Obtaining a Permit.

Fort Myers Code § 86-153 prohibits any parade, procession, or "open-air meeting" without first having obtained a special permit from the chief of police. Further, Fort Myers Code § 58-156, governing park policy, by its terms, targets **all *political speech and conduct*** to be burdened with the requirement of shutting down at 10:30 p.m. or not beginning prior to 6:30 a.m., while exempting athletic events, cultural and civic activities, and other non-political association and assembly.

As noted by the Eleventh Circuit in a Georgia ordinance challenge involving political demonstrations in public fora, where an ordinance's "language targets 'political' expression, however defined ... [and] leaves other speech untouched ... [it] therefore classifies and regulates expression on the basis of content." *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1251 (11th Cir. 2004), *citing Hall v. Board of Sch. Comm'rs*, 681 F.2d 965, 970-71 (5th Cir. 1982). The

8

language of the Augusta-Richmond ordinance[4] challenged in *Burk* highlights the favoring of commercial speech and the targeting of political speech.[5]

Other Eleventh Circuit decisions have noted with certitude that disfavoring political speech renders a permit scheme "**content-based.**" In analyzing a allegations of viewpoint discrimination in a sign ordinance in Alabama, an Eleventh Circuit panel noted that "[b]ecause [the ordinance] undeniably favors commercial speech over non-commercial speech, it is a content-based restriction." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271 (11th Cir. 2006). Further, the *KH Outdoor* court stated that it agreed with the lower court's finding that the city ordinance "unconstitutionally discriminates against non-commercial speech over commercial speech by requiring political signs to be only temporary in nature, while allowing commercial signs to be displayed without time restrictions." *Id.* at 1271. In a case involving the display of political signs, and exemptions to a city sign code, the court ruled that "many of the sign code's exemptions are plainly content based." *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1263-64 (11th Cir. 2005). In acknowledging the disparate treatment afforded different types of

---

[4] The Augusta-Richmond County Code provided that "[t]here shall be no public demonstration or protest ... consisting of five (5) or more persons on any sidewalk, street, public right-of-way or other property within Augusta <u>unless a permit for same have been issued</u> for same by the Sheriff." Code § 3-4-11 (emphasis supplied). Augusta-Richmond County Code § 3-4-1(e) defined **Protest/Demonstration** as "Any expression of support for, or protest of, any person, issue, political or other cause or action which is manifested by the physical presence of persons, or the display of signs, posters, banners and the like." *Burk*, 365 F.3d at 1249-50.

[5] Further, the *Burk* court stated that the Augusta Ordinance was not justified by its purported content-neutral goals. "The Ordinance's purported goals are maintaining public safety, avoiding traffic congestion, keeping the peace, and providing advance notice to law enforcement officials of public events ... [b]ut the Ordinance regulates countless expressive activities that do not threaten public safety, traffic or the peace, and it fails to regulate countless other expressive activities that do threaten the harms." *Burk*, 365 F.3d at 1252.

speech,[6] the *Solantic* tribunal asserted that "[t]o express any political message not directly related to an upcoming election, a would-be <u>speaker Must comply with the sign code's permitting rules and all of its other restrictions.</u>" *Id.* at 1265 (emphasis supplied). This regulatory maze is the same type of burden under which all political activists and organizations must now operate within the City of Fort Myers. The *Solantic* court specifically held that "the **exemptions** from Neptune Beach's sign code render it an unconstitutional **content-based scheme** of speech regulation." *Id.* at 1274 (emphasis supplied).[7]

In ***Bourgeois v. Peters***, 387 F.3d 1303, 1315 (11th Cir. 2004), one of the fatal flaws in the targeted search policy was that the City of Columbus specifically targeted the School of the Americas Watch demonstration, as opposed to other large gatherings, including sporting events (where violence was known to have occurred), and so the "arbitrary application" of police activity to specific political events was decidedly suspect and constitutionally infirm. *Id.* at 1322.

In viewing the Columbus-specific policies imposing such viewpoint discrimination to restrict First Amendment-protected speech and assembly, the court ruled in ***Bourgeois*** that the police chief infringed on the School of the Americas Watch's right to protest, and that "when a government official decides that certain expressive activity will lead others to break the law, he is making a **content-based** decision." *Id.* at 1320 (emphasis supplied), *citing **Forsyth County v.***

---

[6] For example, the court noted that illuminated parking signs received more favorable treatment since they could remain indefinitely, and therefore "a large neon arrow receives more favorable treatment under the sign code than a political sign." *Solantic*, 410 F.3d at 1265.

[7] *See also **Dimmitt v. City of Clearwater***, 985 F.2d 1565, 1569 (11th Cir. 1993).

10

*Nationalist Movement*, 505 U.S. 123, 134 (1992).[8]

## B. Defendant's Content-Based Permit Scheme Cannot Withstand Strict Scrutiny

As noted hereinabove, since Fort Myers multiple-pringed permit scheme is content-based, it is subject to **strict scrutiny**, and can only survive if "it constitutes the least restrictive means of advancing a compelling government interest." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1269 (11th Cir. 2006); *Cooper v. Dillon*, 403 F.3d 1208, 1216 (11th Cir. 2005) (Florida statute deemed content-based, must be subjected to strict scrutiny); *Burk*, 365 F.3d at 1255.

As the *Burk* tribunal noted, where an ordinance is "a content-based prior restraint on speech, we must strictly scrutinize it to ascertain whether it employs the least restrictive means to meet a compelling government interest." *Burk*, 365 F.3d at 1255. "Few laws survive such scrutiny." *Id.*

Plaintiffs begin the "least restrictive means" analysis by noting that, within the specific context of a prior restraint on speech, "[w]hen the Government restricts speech, *the Government bears the burden* of proving the constitutionality of its actions." *Watchtower Bible v. Village of Stratton*, 536 U.S. 150, 170 (2002).[9] The City of Fort Myers' scheme, in effectively burdening all political speech and assembly with a permit requirement (while exempting much non-political activity) is clearly a **sweepingly broad** method of advancing purported goals, rather than the **least**

---

[8] As the *Forsyth* court remarked, the fee ordinance provision "contains more than the possibility of censorship through uncontrolled discretion ... [it] often requires that the fee be based on the **content** of the speech." *Forsyth*, 505 U.S. at 133-34.

[9] Breyer, J., concurring (emphasis in original); *citing U.S. v. Playboy Enter. Group, Inc.*, 529 U.S. 803, 816 (2000).

11

**restrictive** means of reaching those goals, which the city has identified as safety, convenience and other generic goals. In reviewing a sign code justification of "traffic safety," Circuit Judge Marcus recently opined that "[t]he problem is that the ordinance recites those interests only at the highest level of abstraction, without ever explaining how they are served by the sign code's regulations generally, much less by its content-based exemptions from those regulations." *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1267 (11th Cir. 2005). Essentially, references to "general purposes" are clearly insufficient to support content-based distinctions. *Id.* As noted in *Burk*, the government could have promoted goals through numerous less restrictive means. "It could, for example, target only offensive behavior, or the manner of delivery of speech without regard to viewpoint or subject matter." *Burk*, 365 F.3d at 1255.

As to whether the permit scheme advances a compelling government interest, the Eleventh Circuit has specifically held that "traffic safety ... is not a compelling state interest of the sort required to justify <u>content-based regulation</u> of non-commercial speech." *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1570 (11th Cir. 1993).[10] As to the general interest in promoting public safety and welfare, the content-based burdens which Fort Myers places on both the political events and political activists is "substantially **underinclusive** to meet the meet the government's purported interest in public safety." *Bourgeois*, 387 F.3d at 1322 (emphasis supplied).

**POINT 3 - DEFENDANT'S PERMIT SCHEME IS CONSTITUTIONALLY OVERBROAD INSOFAR AS IT RESTRICTS AND PENALIZES PROTECTED SPEECH, AND ALSO ALLOWS UNBRIDLED DISCRETION**

---

[10] *See also Solantic*, 410 F.3d at 1262 ("City's asserted interest in aesthetics and traffic safety was 'not a compelling state interest of the sort required to justify content based regulation'")

12

Peaceful protest on public sidewalks is a quintessential First Amendment activity. *See e.g., Perry*, 460 U.S. at 45; *Gregory v. City of Chicago*, 394 U.S. 111, 112 (1969). The City may not "make criminal the peaceful expression of unpopular views. . . . 'unless shown likely to produce a clear and present danger of a serious substantive evil that rises **far above public inconvenience, annoyance, or unrest**.'" *Terminiello v. Chicago*, 347 U.S. 1, 4-5 (1949). In determining several years ago whether a municipality's permit scheme was constitutionally overbroad, the Supreme Court noted that "[t]he mere fact that the ordinance covers so much speech raises constitutional concerns." *Watchtower Bible v. Village of Stratton*, 536 U.S. 150, 165 (2002). "It is offensive - not only to the values protected by the First Amendment, but to the very notion of a free society - that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so." *Id.* at 165-66. And so it is with the breadth and intrusiveness of Fort Myers' permit scheme, including : (1) the targeting of political speech; (2) the failure to include an exception for spontaneous speech; (3) the application to groups as small as two persons; (4) the loss of anonymity; and (5) the provision of unbridled discretion to the police chief as he/she decides whether to grant or deny a permit to speak or assemble within the city. Defendant City of Fort Myers "may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 637 (1980).

The first indicium of overbreadth would be Fort Myers' <u>targeting of all political activity</u>

for the intrusive burdens inherent in the "Parade and Processions,"[11] "Park Operating Policy,"[12] and "Special Events Advisory Board"[13] permit scheme. As noted by the *Schaumburg* court, it would be permissible for a city to target illegal **conduct** in its code, and utilizing penal laws to punish transgressions, thereby utilizing less intrusive measures to meet governmental interests, 444 U.S. at 637-38, but this methodology is absent from Fort Myers' code.

The second overbreadth marker is that there is a total ban on <u>spontaneous speech</u>. For example, the City's Special Events Pamphlet delineates advance notice requirements ranging from 15 to 90 days. This constitutes an impermissible ban on spontaneous speech. *See Watchtower Bible*, 536 U.S. at 167.[14]

The third indicium of overbreadth is Fort Myers' utter failure to make an exception for "<u>small group speech</u>." Placing the Fort Myers permitting burden, its park policies, and parade restrictions, on as few as two (2) persons holding an anti-war sign in the park or on a street corner, is decidedly overbroad and constitutionally infirm. As the Eleventh Circuit panel in *Burk* noted, "the Ordinance regulates countless expressive activities that do not threaten public safety, traffic, or the peace . . . [it] restricts a five-person political discussion or silent sit-in at the sidewalk's

---

[11] Fort Myers Code Sec. 86-153(b).

[12] Fort Myers Code Sec. 58-156(a).

[13] Fort Myers Code Sec. 2-273(2).

[14] The Supreme Court has for forty years condemned permitting schemes that fail to make allowance for spontaneous speech. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 163 (1969) ("timing is of the essence in politics . . . and when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all"). Other circuits have followed this lead. *See, e.g., Church of the American Knights of the Ku Klux Klan v. City of Gary*, 334 F.3d 676, 682 (7th Cir. 2003); *Douglas v. Brownell*, 88 F.3d 1511 (8th Cir. 1996).

edge even though such events are unlikely to threaten the County's feared harms." *Burk*, 365 F.3d at 1252-53.[15]

The fourth signal that this Fort Myers permit scheme is overbroad is that small groups must <u>surrender their anonymity</u> to engage in lawful core political speech in public places in the City. As the Supreme Court noted in *Watchtower Bible*, "there are a significant number of persons who support causes anonymously." 536 U.S. at 166. This desire to remain anonymous may be predicated on "fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible." *Id., quoting McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995). Insofar as Fort Myers makes no allowance for the retention of privacy by even the smallest group, it's scheme is overbroad.

Fifth, the permitting scheme allows the Special Events Advisory Board, park personnel and police chief to make decisions with <u>unbridled discretion</u> on several important factors in the permitting process; ranging from the waiver of event fees (Special Events Code, Sec. 2-273(1)(d)) to the determination of parade fees (Parades and Processions Code, Sec. 86-153(b)). The lack of clarity in these guidelines or requirements, and the ability of a governmental official to engage in discriminatory decision-making because of the unbridled discretion inherent in the code's imprecision, renders the permit scheme constitutionally infirm. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134 (1992).[16]

---

[15] See cases collected in *Burk*, 365 F.3d at 1255, fn 13.

[16] At to the success of a facial challenge based on unbridled discretion, the court note that "the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but <u>whether</u> there is anything in the ordinance <u>preventing him from doing so</u>." *Forsyth County*, 505 U.S. at 133, fn 10 (emphasis supplied).

15

**POINT 4 - DEFENDANT'S PERMIT SCHEME IS IMPERMISSIBLE VAGUE AND RESTRICTS A LIBERTY INTEREST UNDER THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE**

Vagueness can invalidate a criminal law because either: (1) it failed to provide the kind of notice that allow ordinary persons to understand what conduct is prohibited, or (2) it authorizes or encourages arbitrary and discriminatory enforcement. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). The City of Fort Myers' Loitering and Boisterousness prohibition is unconstitutionally vague, in part because there is uncertainty about what type of loitering or boisterous behavior would be considered offensive conduct, and which conduct would not fall within its sweep. *Id.* at 57.

Courts have consistently invalidated laws or ordinances that do not join the crime of loitering with a second specific element. *Id.* at 58. Fort Myers' Loitering ban is unconstitutionally vague because it fails to alert the public as to precisely what type of conduct is prohibited since the defendant city could not "conceivably have meant to criminalize each instance a citizen stands in public." *see id.* at 57, which is the literal impact of Fort Myer's prohibition against one who might "protractedly lounge" on a seat, bench or other area. The ban in Fort Myers' Code § 58-154 (6) against "loud, boisterous . . . insulting or indecent language" is similarly vague; surely the City cannot rationally assert that if two brothers are sitting on a park bench in Centennial Park, and the first boldly asserts that his brother is substantially overweight, and such remark is overheard by a police officer, that the first brother may then be led away in handcuffs?

In post-*Morales* cases dealing with hazily-worded ordinances banning vagrancy, loitering, or related conduct, both state and federal courts have been more diligent in ensuring that Fourteenth Amendment due process rights against such vague prohibitions are protected. *See, e.g., Johnson v. Athens-Clarke County*, 529 S.E.2d 613, 272 Ga. 384 (Ga. 2000) (Georgia Supreme Court invalidation of county loitering ordinance on vagueness grounds); *Leal v. Town of Cicero*, 2000 U.S. Dist. LEXIS 5860 (N.D.Ill. 2000) (striking down municipal loitering ordinance on due process grounds as vague and standardless because of lack of enforcement guidelines for police).

Freedom to loiter "for innocent purposes" is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999). The Supreme Court has held that a person's decision to remain in "a public place of his choice" or to move to another place upon his own inclination is "as much a part of . . . liberty as the freedom of movement inside frontiers that is 'a part of our heritage.'" *Id.*, citing *Kent v. Dulles*, 357 U.S. 116, 126 (1958). Fort Myers' Code § 58-154 unconstitutionally restricts the liberty interest of Plaintiffs by criminalizing sleeping at noon while on a lunch break in Centennial Park, sitting for an hour on a park bench or remaining on a sidewalk in the park for an "excessive" period. Plaintiffs have a constitutional right to stand or remain on a public place if their conduct is not injurious or threatening. Fort Myers' Loitering and Boisterous Behavior ban violates critically important due process rights guaranteed by the Fourteenth Amendment, and is invalid.

### POINT 5 - PLAINTIFFS MEET THE REQUISITE STANDARDS FOR A TEMPORARY RESTRAINING ORDER AND A PRELMINARY INJUNCTION

A temporary restraining order or a preliminary injunction is proper if a plaintiff establishes four elements: 1) a substantial likelihood of success on the merits; 2) the likelihood of irreparable injury unless the injunction issues; 3) the balance of harms tips in favor of the moving party; and 4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir.). Plaintiffs readily meet each part of this test.

#### A. There Is a Substantial Likelihood That Plaintiffs Will Succeed on the Merits

As discussed hereinabove, Plaintiffs have a substantial likelihood that they will succeed on the merits of their claim, for the reasons set forth in Points 1 through 4, *supra.*

#### B. Irreparable Injury Will Occur if the Preliminary Injunction is Not Granted

The loss of First Amendment freedoms *unquestionably* constitutes irreparable injury. *KH*

*Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006), *quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976) (emphasis added). The Eleventh Circuit has held that there is a finding of irreparable harm when First Amendment rights are violated on an ongoing basis because the plaintiffs cannot be made whole by money damages in situations whereby their free speech is chilled. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) citing *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). As noted above, Fort Myers City Code Sections 2-273, 58-156 and 86-153 constitute an impermissible prior restraint on free speech, and accordingly violate the First Amendment.

### C. The Balance of Hardships Favors Plaintiffs

The injury to the Plaintiffs as a result of the provisions requiring advance permitting and unbridled discretionary authority is the violation of their First Amendment right to free speech, assembly and association. Such an egregious violation of civil rights poses a grave hardship to Plaintiffs seeking to convey their political and social justice messages. The Defendant, however, does not suffer great injuries. Defendant Fort Myers may need to add additional law enforcement officers to enhance security, but such a hardship is no greater than any other increase in security a municipality or university might face when large numbers of people gather together, such as at a concert or sporting event. Defendant is still free to maintain the peace by enforcing existing criminal laws to keep an area secure. The granting of injunctive relief to Plaintiffs will not alter this prerogative. As a result, when balancing the hardships, it is clear that the greater injury is to the Plaintiffs who are faced with restrictions on First Amendment-protected activity.

### D. Granting Plaintiffs' Preliminary Injunction is in the Public Interest

A preliminary injunction is in the public interest in the case *sub judice*. "[T]he public interest is always served when constitutional rights, especially free speech rights, are vindicated." *University Books & Videos, Inc. v. Metropolitan Dade County*, 33 F. Supp.2d 1364, 1374 (S.D.

18

Fla. 1999). "The public has no interest in enforcing an unconstitutional ordinance." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d at 1272. Furthermore, it is not in the public interest to support a governmental entity's expenditure of time, effort and money in order to enforce an unconstitutional ordinance. *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. 1981). The public interest is clearly in favor of Plaintiffs and, thus, injunctive relief should be granted.

## CONCLUSION

For the reasons cited hereinabove, the City of Fort Myers' code provisions are violative of the First Amendment in several key respect. The permit scheme and park operating policy unconstitutionally discriminates based on viewpoint, lacks any standards or guidelines to check unbridled discretion of City officials, and neglects to offer alternative avenues of expression. Further, the scheme is fatally vague and violates substantive due process by offending Plaintiffs' liberty interest. For the reasons delineated hereinabove, these subject code provisions and the permitting scheme should be declared facially unconstitutional, and a permanent injunction issued as to their future use.

Dated: October 25, 2011

_/s/_

JENNIFER LUCAS KEESLER
Fla. Bar No. 67374
Attorney for Plaintiffs
1136 NE Pine Island Rd., Ste 77
Cape Coral, FL 33909
239.240.5057
jennifer@keeslerlaw.com

19