UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OCCUPY FORT MYERS, CINDY BANYAI, STEPHANIE DARST, CHRISTOPHER FAULKNER, F. FRANK GUBASTA, ZACHARY KUHN, HILARY MAINS, MATT McDOWELL, MICHELLE MEYER, LUIS OSPINA, RYAN POGUE, FRANK PRATT, MARLENE ROBINSON, and JUSTIN VALO,

    Plaintiff,

vs.       Case No. 2:11-cv-00608-FtM-29DNF

CITY OF FORT MYERS,

    Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on Plaintiffs' Amended Emergency Motion for a Preliminary Injunction and Request for Expedited Hearing (Doc. #10) filed on October 26, 2011. Plaintiffs, Occupy Fort Myers, Cindy Banyai, Stephanie Darst, Christopher Faulner, F. Frank Gubasta, Zachary Kuh, Hilary Mains, Matt McDowell, Michelle Meyer, Luis Ospina, Ryan Pogue, Frank Pratt, Marlene Robinson, and Justin Valo (collectively, "plaintiffs" or "Occupy Fort Myers"), seek to enjoin the defendant, the City of Fort Myers ("defendant" or "City"), its officers, employees, and agents, from enforcing certain provisions of the Fort Myers City Code of Ordinances and from issuing additional criminal penalties to plaintiffs based upon violations of these ordinances. Plaintiffs assert that the challenged city ordinances

on their face violate plaintiffs' rights to free speech, assembly, and association under the First Amendment to the United States Constitution and/or their substantive due process rights under the Fourteenth Amendment to the United States Constitution. Plaintiffs filed a Verified Complaint (Doc. #1) which attached a number of affidavits, a Memorandum of Law (Doc. #5), and an exhibit (Doc. #30) in support of their request for a preliminary injunction.

The City opposes the preliminary injunction, filing a Response (Doc. #29), various affidavits in opposition (Docs. #23, 24, 25, 31), and exhibits (Docs. #27, 28). The Court heard oral argument on October 31, 2011. The City thereafter filed supplemental authority (Doc. #36) as requested by the Court during oral argument, and several additional exhibits (Docs. ##35, 37). Plaintiffs filed a Response (Doc. #38) to the additional filings. At the request of the Court, the City then filed a Response (Doc. #42) to one of the issues raised at oral argument.

## I.

According to the Complaint, Occupy Fort Myers ("Occupy Fort Myers" or "OFM") is an unincorporated association of individuals who have gathered in Fort Myers, Florida "to bring visibility to the influence of private money into the nation's political process" (Doc. # 1, ¶4) and "attempt to bring visibility to the insidious influence of money into the U.S. political process, and to inform members of the general public on political issues such as social

-2-

justice and economic equality." (Doc. #1, ¶19). "A core purpose of [Occupy Fort Myers] is to bring awareness to the concerns about the U.S. political process and economic policy through symbolic, around-the-clock, peaceful protests referred to as 'occupations.'" (Doc. #1, ¶4.)

Prior to a planned rally, Occupy Fort Myers contacted the Fort Myers Police Department (FMPD) to inquire about obtaining a permit for the rally and march in downtown Fort Myers. Occupy Fort Myers was told it could rally and march on October 15, 2011, if it did not use a megaphone, march in the street, or include vulgar language on signs. (Id. at ¶21). As to the symbolic occupation of Centennial Park, the FMPD advised Occupy Fort Myers to contact the City's Recreation Division for a permit for overnight occupation. Occupy Fort Myers held a noon rally and march on October 15, 2011, and began "occupying" Centennial Park that evening without a permit. From October 15, 2011, through October 19, 2011, members of Occupy Fort Myers were allowed to "occupy" Centennial Park overnight without a permit. (Id. at ¶24.)

On October 18, 2011, the City provided Occupy Fort Myers with a "Special Events" pamphlet (Doc. #30) which included information and an application for a permit to remain in the City parks overnight. Occupy Fort Myers completed the permit application and submitted it to the City's Recreation Division on the same day. (Id. at ¶25.)

On October 19, 2011, the City informed Occupy Fort Myers that before its permit application could be reviewed it was necessary for it to obtain a $1 million liability insurance policy and bring the insurance certificate to the City.  Occupy Fort Myers was informed that the City intended to enforce the ordinance which prohibits setting up tents and overnight camping in a park beyond closing hours if Occupy Fort Myers did not comply with the insurance requirement.  Under that ordinance, city parks are open from 6:00 a.m. until 10:30 p.m.  Although the City initially required insurance from Occupy Fort Myers by October 18, 2011, at 3:00 p.m., the City extended the time to comply until October 19, 2011.  (Id. at ¶¶26-27.)

On October 19, 2011, Occupy Fort Myers informed the City that it could not comply with the insurance requirement.  The City gave Occupy Fort Myers the names of three insurance companies and agreed to allow an additional day for Occupy Fort Myers to obtain insurance.  (Id. at ¶27.)  Later on October 19, Occupy Fort Myers informed the City that the three insurance companies would not provide an insurance policy, and that Occupy Fort Myers could not comply with the insurance requirement.  (Id. at ¶28).  In any event, Occupy Fort Myers asserts it has no funds to pay for insurance even if it was available.  (Id. at ¶29).  The City also informed Occupy Fort Myers that it would be required to obtain another permit and an insurance policy every ten days.  (Id.)

Occupy Fort Myers asserts that there are no procedures to appeal the City's denial of their request for a waiver of insurance or the denial of the permit.  (Id.)

On October 20, 2011, Occupy Fort Myers continued to negotiate with the City for a permit, but the City would neither issue a permit nor identify any procedure for requesting either waiver or appeal.  (Id. at ¶30.)  Accordingly, on the evening of October 20, 2011, at approximately 10:45 p.m., the FMPD began issuing citations to individuals for violating City ordinances.  According to the Complaint, eleven of the twelve individual plaintiffs have received at least one $135 citation between October 20 and 22, 2011, for their involvement in "symbolic First Amendment-protected speech." (Id. at ¶¶5-16.)[1]  The twelfth individual plaintiff, while not cited, participates and assists in OFM activities, and feels that his and others' speech rights have been hindered and chilled by the alleged unconstitutional ordinances.  (Id. at ¶17.)

Plaintiffs filed a four-count Complaint (Doc. #1) pursuant to 42 U.S.C. § 1983.  Count One asserts that Ordinances §§ 2-271 through 2-273 (the "Special Events Advisory Board Ordinance") and Ordinance § 58-156 (the "Park Regulations Ordinance") are unconstitutional on their face as "viewpoint discrimination" in violation of the First Amendment.  Count Two asserts that the

---

[1]The Chief of Police has filed Affidavits stating that as of October 26, 2011, seventy-three (73) citations have been issued. (Docs. #23, 31).

Special Events Advisory Board Ordinance, Ordinance § 86-153 (the "Parades and Processions Ordinance"), and the Park Regulation Ordinance are unconstitutionally overbroad on their face. Count Three asserts that the Park Regulation Ordinance is impermissibly vague and unconstitutional on its face. Count Four alleges that the Park Regulation Ordinance and the Parades and Processions Ordinance on their face violate plaintiffs' Fourteenth Amendment liberty interests to lounge on public benches and places "according to their inclination" and to "meet" with others in "open air" places within the City limits. Plaintiffs correctly assert the Court has jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343(a), and incorrectly allege jurisdiction pursuant to 28 U.S.C. § 2201 and §2202.[2]

## II.

A federal court has inherent authority to issue an injunction to remedy a violation of constitutional rights. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004). "The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011).

---

[2]GTE Directories Pub. Corp. v. Trimen Am., 67 F.3d 1563, 1567 (11th Cir.1995)("At the outset we note that the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather is operative only in respect to controversies which are such in the constitutional sense.... Thus the operation of the Declaratory Judgment Act is procedural only." (internal citation and punctuation omitted)).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v.NRDC, 555 U.S. 7, 20 (2008).  The Eleventh Circuit has described the four "well known" prerequisites for such a preliminary injunction as follows:

> A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). The burden of persuasion for each of the four requirements is upon the party seeking the preliminary injunction.  Siegel, 234 F.3d at 1176.  These same standards apply in cases involving the First Amendment.  E.g., Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213, 1217 (11th Cir. 2009); Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1253 n.3 (11th Cir. 2005).  "[A] preliminary injunction in advance of trial is an extraordinary remedy." Bloedorn, 631 F.3d at 1229.

## III.

The overarching issue is whether plaintiffs have satisfied all four prerequisites to obtain a preliminary injunction as to any of

the challenged ordinances.  The Court discusses each requirement in turn.

## A.    Substantial Likelihood of Success on the Merits

The bulk of the arguments and issues focus on this prong of the requirements for a preliminary injunction.  If an ordinance does not violate the First Amendment, plaintiffs cannot show a likelihood of success on the merits as to that ordinance.  Gold Coast Publ'g, Inc. v. Corrigan, 421 F.3d 1336, 1343 (11th Cir. 1994).  If plaintiffs are unable to show a substantial likelihood of success on the merits, the Court need not consider the other requirements for a preliminary injunction.  Bloedorn, 631 F.3d at 1229.

### (1)  First Amendment Applies to Municipal Governments:

To start at the beginning, the First Amendment to the U.S. Constitution provides in pertinent part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Supreme Court has long held that the First Amendment applies to the States through the Fourteenth Amendment.  Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 792 n. 2 (1984), citing Lovell v. Griffin, 303 U.S. 444, 450 (1938) ("Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal

rights and liberties which are protected by the Fourteenth Amendment from invasion by state action" (citing cases)). Likewise, "municipal ordinances adopted under state authority constitute state action and are within the prohibition of the [First] [A]mendment". Lovell, 303 U.S. at 450. No party disputes that the First Amendment applies to the City of Fort Myers ordinances.

**(2) First Amendment Framework:**

It is well settled that the First Amendment protection of speech and assembly is not absolute. Thus, while the First Amendment applies to the City's conduct, a city government "need not permit all forms of speech on property that it owns and controls." International Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992). A three step process is useful when assessing whether government restrictions are valid under the First Amendment: "[F]irst, determining whether the First Amendment protects the speech at issue, [second,] identifying the nature of the forum, and [third,] assessing whether the . . . justifications for restricting [ ] speech 'satisfy the requisite standard.'" Mahoney v. Doe, 642 F.3d 1112, 1116 (D.C. Cir. 2011), quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797 (1985).

**(3)   Is Conduct Within Protection of the First Amendment:**

"As a threshold matter, we must ask whether the First Amendment protects the conduct at issue in the challenged ordinance . . . ." <u>DA Mortg., Inc.</u>, 486 F.3d at 1265-66.  Plaintiffs bear the burden of establishing that the First Amendment applies to their conduct.  <u>Clark v. Community for Creative Non-Violence</u>, 468 U.S. 288, 293 n.5 (1984); <u>United States v. Gilbert</u>, 920 F.2d 878, 883 (11th Cir. 1991).  "Whether certain activity or speech is protected by the first amendment is a question of law for the district court." <u>Sykes v. McDowell</u>, 786 F.2d 1098, 1103 (11th Cir. 1986).

"[I]t has been universally recognized that one of the primary purposes of the First Amendment is to 'protect the free discussion of governmental affairs' because the maintenance of a responsible democratic government depends upon it." <u>Cooper v. Dillon</u>, 403 F.3d 1208, 1214 (11th Cir. 2005), <u>quoting Landmark Comm's., Inc.</u>, 435 U.S. 829, 838 (1978).  As the Supreme Court recently stated:

> Speech on matters of public concern is at the heart of the First Amendment's protection.  The First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.  That is because speech concerning public affairs is more than self-expression; it is the essence of self-government.   Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection.

<u>Snyder v. Phelps</u>, 131 S. Ct. 1207, 1215 (2011)(internal citations and punctuation omitted).  "Speech deals with matters of public

concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Snyder, 131 S. Ct. at 1215 (citations and internal punctuation omitted).

There is no dispute that much of the conduct by Occupy Fort Myers and its participants falls within the protection of the First Amendment.   The City does not dispute that plaintiffs' efforts involving rallies, marches, distribution of literature, displaying signs and posters, and engaging in conversations regarding the topics which prompted the "occupation" are matters of public concern and are well within the protection of the First Amendment.

More problematic is the claim to First Amendment protection for what are essentially sleeping and camping activities.  At oral argument, counsel for plaintiffs described the current conduct in Centennial Park as setting up 10-12 tents, with four or five people staying within the tents twenty-four hours a day and the remaining participants "rotating" in and out.   The participants eat food brought in by others, but do not cook food at the location.   No fixed numbers of people or fixed duration of the occupation have ever been specified, so this description appears to be inherently fluid.  The City argues that this type of conduct, even if confined to that described currently, is outside the protection of the First Amendment.

Plaintiffs view their "occupation" as symbolic expression, and as such protected by the First Amendment.  "[T]he First Amendment protects symbolic conduct as well as pure speech."  Virginia v. Black, 538 U.S. 343, 360 n.2 (2003).  Symbolic expression delivers a message by conduct that is intended to be communicative and that, in context, would reasonably be understood by the viewer to be communicative.  Clark, 468 U.S. at 294.  The Eleventh Circuit has found that sleeping out-of-doors is not a fundamental right *per se*, Joel v. City of Orlando, 232 F.3d 1353, 1357 (11th Cir. 2000), and the First Circuit has stated that "[t]he act of sleeping in a public place, absent expressive content, is not constitutionally-protected conduct."  Whiting v. Westerly, 942 F.2d 18, 21 (1st Cir. 1991).  Most courts have assumed, without deciding, that sleeping and/or camping could be expressive conduct under appropriate circumstances.  Thus, in Clark, the Supreme Court assumed without deciding that overnight sleeping in a public park was expressive conduct protected by the First Amendment.  468 U.S. at 293.  See also Gilbert, 920 F.2d at 883-84 (expressing "doubts" that sleeping was entitled to First Amendment protection, but assuming it was); Hershey v. Clearwater, 834 F.2d 937, 940 (11th Cir. 1987)(assuming that sleeping can be expressive conduct); Stone v. Agnos, 960 F.2d 893, 895 (9th Cir. 1992)("Although sleeping

would seem to be the antithesis of speaking, we need not determine whether Stone's conduct was a form of expression.")[3]

The Court finds that in the context of this case the tenting and sleeping in the park as described by plaintiffs' counsel is symbolic conduct which is protected by the First Amendment.  The conduct of tenting and sleeping in the park 24 hours a day to simulate an "occupation" is intended to be communicative and in context is reasonably understood by the viewer to be communicative. This expressive conduct relates to matters of public concern because it can be fairly considered as relating to matters of political, social, or other concern to the community and is a subject of general interest and of value and concern to the public.[4]

At oral argument, the City asserted that plaintiffs are engaging in commercial speech by soliciting donations of money, food, and supplies.  Assuming this is factually correct, which seems likely, such conduct would also fall within the protection of the First Amendment, although subject to different standards. Sorrell v. IMS Health Inc., 131 S. Ct. 2653 (2011); Milavetz,

---

[3]Such an assumption only works, of course, if the ordinance is later found to be constitutional.  If the ordinance is later found unconstitutional, a court is forced to actually resolve the threshold issue.

[4]While the conduct may change over time, the Court addresses only the current conduct of plaintiffs.  Changed conduct can be addressed if and as it occurs.

<u>Gallop & Milavetz, P.A. v. United States</u>, 130 S. Ct. 1324, 1339-40 (2010).

Accordingly, the Court finds for purposes of the motion for a preliminary injunction that all the current conduct by plaintiffs at issue in this case is within the protection of the First Amendment.  Having done so, "[t]he validity of restrictions on protected First Amendment expression depends upon the type of speech and the type of forum being regulated." <u>Gold Coast Publ'ns, Inc.</u>, 42 F.3d at 1344; <u>Thomas v. Howze</u>, 348 F.App'x 474, 477 (11th Cir. 2009). The Court addresses these matters in reverse order.

**(4)  Is Centennial Park a Public Forum:**

The second step is to determine the type of forum in which the speech is taking place.  The Supreme Court has recognized a "forum based" approach for assessing the validity of restrictions placed on the use of government property.

> Under this approach, regulation of speech on government property that has traditionally been available for public expression is subject to the highest scrutiny.  Such regulations survive only if they are narrowly drawn to achieve a compelling state interest.  The second category of public property is the designated public forum, whether of a limited or unlimited character-property that the State has opened for expressive activity by part or all of the public.  Regulation of such property is subject to the same limitations as that governing a traditional public forum.  Finally, there is all remaining public property. Limitations on expressive activity conducted on this last category of property must survive only a much more limited review. The challenged regulation need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view.

Krishna Consciousness, 505 U.S. at 679.

A public park is among those venues which have historically been considered public forums closely associated with the free exercise of expressive activities.  In Hague v. CIO, 307 U.S. 496, 515, 516 (1939) the Court found that "streets and parks . . . have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  Since then, numerous cases have referred to public parks as being public forums within the meaning of the First Amendment.  E.g., Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1182 (11th Cir. 2009)("Amnesty also has a constitutional right to engage in peaceful protest on public land, such as in a city park."); Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1521-23 (11th Cir. 1992)(same).

Centennial Park is a City-owned and operated park in downtown Fort Myers bordered by the Caloosahatchee River on one side and several side streets on the other sides.  The City concedes, and the Court agrees, that Centennial Park is a public forum for First Amendment purposes.

**(5)  Standards for Justification of Restrictions:**

Finding all the conduct is protected by the First Amendment and that Centennial Park is a public forum "only begins the inquiry."  Clark, 468 U.S. at 293; Black, 538 U.S. at 361.  "Even the prohibition against content discrimination that we assert the

First Amendment requires is not absolute." R.A.V. v. City of St. Paul, 505 U.S. 377, 387 (1992). See also Snyder, 131 S. Ct. at 1218 ("Even protected speech is not equally permissible in all places and at all times."); Bloedorn, 631 F.3d at 1230 ("It is by now clear that the First Amendment does not guarantee access to property just because it is owned by the government."); Naturist Soc'y, 958 F.2d at 1523 ("Even though [the park] is a public forum, the Naturists are not free to exercise First Amendment rights in any way they see fit.") Rather, conduct protected by the First Amendment is "subject to reasonable time, place, or manner restrictions that are consistent with the standards announced in this Court's precedents." Snyder, 131 S. Ct. at 1218, citing Clark, 468 U.S. at 293. See also First Vagabonds Church of God v. City of Orlando, Fla., 638 F.3d 756,761 (11th Cir. 2011)(en banc). The "standards announced in this Court's precedents," Snyder, 131 S. Ct. at 1218, depend largely on whether the restrictions on the activities are content-based or content-neutral. Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1258 (11th Cir. 2005).

**(a)   Content-Neutral Restrictions:**

Content neutral restrictions on conduct protected by the First Amendment in a public forum are proper if "they are narrowly tailored to serve a significant governmental interest, and [ ] they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791

(1989) quoting Clark, 468 U.S. at 293 (internal citations omitted).
See also Snyder, 131 S. Ct. at 1218; Amnesty Int'l, 559 F.3d at
1182.  Symbolic expression "may be forbidden or regulated if the
conduct itself may constitutionally be regulated, if the regulation
is narrowly drawn to further a substantial governmental interest,
and if the interest is unrelated to the suppression of free
speech." Ward, 468 U.S. at 294.

To determine whether an ordinance is content-neutral, a court
generally looks to the terms of the ordinance to see if the
ordinance "distinguish[es] favored speech from disfavored speech on
the basis of the ideas or views expressed." Solantic, 410 F.3d at
1259 and n.8, quoting Turner Broad. Sys., v. FCC, 512 U.S. 622, 643
(1994).  If content neutral, the government restriction:

> need not be the least restrictive or least intrusive means of
> doing so. Rather, the requirement of narrow tailoring is
> satisfied so long as the regulation promotes a substantial
> government interest that would be achieved less effectively
> absent the regulation.  To be sure, this standard does not
> mean that a time, place, or manner regulation may burden
> substantially more speech than is necessary to further the
> government's legitimate interests.  Government may not
> regulate expression in such a manner that a substantial
> portion of the burden on speech does not serve to advance its
> goals. So long as the means chosen are not substantially
> broader than necessary to achieve the government's interest,
> however, the regulation will not be invalid simply because a
> court concludes that the government's interest could be
> adequately served by some less-speech-restrictive alternative.
> The validity of time, place, or manner regulations does not
> turn on a judge's agreement with the responsible decision
> maker concerning the most appropriate method for promoting
> significant government interests or the degree to which those
> interests should be promoted.

<u>Ward</u>, 491 U.S. at 798-99.  "To demonstrate the significance of its interest, the City is not required to present detailed evidence. . .,[but] is entitled to advance its interests by arguments based on appeals to common sense and logic."  <u>Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1318 (11th Cir. 2000)(citations omitted.)   To establish an ordinance is narrowly tailored, the Court must determine whether there is a "reasonable fit" between the governmental interests and the ordinance.  <u>Cincinnati v. Discovery Network</u>, 507 U.S. 410, 416 (1993).   <u>See also Coalition for the Abolition of Marijuana Prohibition</u>, 219 F.3d at 1318; <u>International Caucus of Labor Comms. v. City of Montgomery</u>, 111 F.3d 1548, 1551 (11th Cir. 1997). Finally, a content-neutral restriction must allow ample alternative channels of communication.  The City can satisfy this requirement even if the other channels may be less effective than plaintiffs would prefer.   <u>Coalition for the Abolition of Marijuana Prohibition</u>, 219 F.3d at 1319.

### (b)   Content-Based Restrictions:

Content-based restrictions on conduct protected by the First Amendment require heightened judicial scrutiny.  <u>Sorrell</u>, 131 S. Ct. at 2653.   Content-based restrictions are found where the statute's prohibition is "directed only at works with a specified content."  <u>Simon & Schuster, Inc. V. N.Y. State Crime Victims Bd.</u>, 502 U.S. 622, 643 (1994).   A content-based regulation is

presumptively invalid, and the government has the burden to rebut that presumption. <u>United States v. Stevens</u>, 130 S. Ct. 1577, 1584 (2010); <u>DA Mortg.</u>, 486 F.3d at 1266 n.8.  With a content-based restriction, the government must show: (1) that the regulation is necessary to serve a compelling state interest; and (2) that regulation is narrowly drawn to achieve that end. <u>Boos v. Barry</u>, 485 U.S. 321, 321-22 (1988).

In sum, if restrictions on conduct protected by the First Amendment in a public forum are content neutral, they are lawful if: (1) there is a significant governmental interest in restricting the conduct; (2) the restriction is narrowly tailored to achieve that government interest; and (3) the restriction leaves open ample alternative channels for protected expression.  If, on the other hand, restrictions on conduct protected by the First Amendment in a public forum are content based, they are lawful if: (1) there is a compelling governmental interest; (2) the restriction is necessary to serve that interest; and (3) the restriction is narrowly drawn to achieve the interest.

**(6)  The Challenged Ordinances:**

As the Complaint states, and as counsel for plaintiffs confirmed at the oral argument, all four counts are facial challenges to the City ordinances.

> A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself.  And, when a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the

> burden of proving that the law could never be applied in a constitutional manner. This is because a party who asserts a facial challenge to a statute is seeking not only to vindicate his own rights, but also those of others who may be adversely impacted by the statute.

DA Mortg., 486 F.3d at 1262 (internal citations and punctuation omitted).  See also Jacobs v. The Fla. Bar, 50 F.3d 901, 906 n.20 (11th Cir. 1995).

### (a)  Ordinance 2-273:

Plaintiffs challenge Ordinances 2-271 to 273, entitled the "Special Events Advisory Board" Ordinance, as "unconstitutional on its face as an impermissible prior restraint, containing terms which provide for targeted regulation of core political speech while allowing unbridled discretion in the Board to provide exemption of permit requirements for commercial speech." (Doc. #1, Count One, ¶46).  Plaintiffs also allege that this ordinance "is unconstitutional on its face as an impermissible prior restraint, containing terms which provide for targeted regulation of core political speech while allowing unbridled discretion in the Board to provide exemption of permit requirements for commercial speech." (Doc. #1, Count Two, ¶54.)  The motion for a preliminary injunction only seeks to enjoin the enforcement of Ordinance 2-273.  (Doc. #10, p. 2, ¶2.)

The Special Events Advisory Board Ordinance, a copy of which is attached to the Complaint, creates a Special Events Advisory Board and provides it with the following powers and duties:

The special events advisory board shall:

(1) Act in an advisory capacity to the city council in matters relating to special events proposed by event managers, which are:

    a.   Open to the public
    b.   Held within the city limits in spaces which are overseen by the city;
    c.   Expected to attract more than 1,000 people; and
    d.   Requesting the city council approve a waiver or a reduction of fees or a cash sponsorship;

(2) Endeavor to facilitate quality cultural and artistic events that enhance the quality of life for the citizens of the city, and provide exposure and positive social and economic impacts for the city, by either recommending or withholding recommendation of funding to the city council for a special event that meets the four criteria described in (1) of this section, based on a competitive process;

(3) Recommend to the city council special events that should receive city sponsorship by a reduction or waiver in the fees charged for the use of public property and/or the cost of services to be provided by the city, based on a weighted scale of merit;

(4) Recommend regulations for the conduct of special events that will increase interest therein to the citizens, residents and visitors of the city generally, insofar as the same are not in conflict with the city Code and state statutes;

(5) Have such other advisory duties granted by the city council consistent with successful special events held within the city.

Fort Myers, Fla. City Ordinance § 2-273.

It is clear, as the City stated at oral argument, that this ordinance creates a content-based advisory group. The very purpose of the Special Events Advisory Board is to form content-based

opinions and make content-based recommendations to the City Council.

The ordinance is not a violation of the First Amendment, however, because the ordinance gives the Board no power to implement any of its recommendations. "A municipal governing body may be held liable for acts or policies of individuals to whom it delegated final decision making authority in a particular area. A member or employee of a governing body is a final policy maker only if his decisions have legal effect without further action by the governing body." Holloman v. Harland, 370 F.3d 1252, 1291-92 (11th Cir. 2004)(citations omitted). Plaintiffs have failed to establish a substantial likelihood that Ordinances §§ 2-271 to 2-273 are unconstitutional on their face as a violation of the First Amendment. Accordingly, the request for a preliminary injunction as to these ordinances is denied.

The Court recognizes that the pamphlet given to Occupy Fort Myers (Doc. #30, p. 5) states: "The Special Event Advisory Board may have final approval of all events as detailed in City Ordinance #3019." Neither party has provided the Court with Ordinance #3019, and the Court has been unable to find such an ordinance. In any event, the challenged ordinances simply do not contain such authority. Therefore, the facial challenge to the ordinance is unlikely to succeed.

-22-

**(b)   Ordinance 86-153:**

Plaintiffs challenge Ordinance 86-153, entitled the "Parades and Processions" Ordinance, which requires a City permit from the police department prior to parades or processions on any city street and any open air public meeting on any public property. Plaintiffs allege that this ordinance "is unconstitutional on its face as an impermissible prior restraint, containing terms which provide for targeted regulation of core political speech while allowing unbridled discretion in the Chief of Police to show preference of non-political speech."  (Doc. #1, Count Two, ¶55.) Plaintiffs also challenge this ordinance as vague (Count Three) and a violation of their liberty interests (Count Four).

Section 86-153 states in relevant part:

(a)   No parade or procession upon any street of the city, and no open-air public meeting upon any public property shall be permitted unless a special permit shall first be obtained.  Any person desiring a permit under this section shall make written application to the chief of police or some duly authorized member of the police department. Permits issued under this section shall be printed or written, duly signed by the chief of police or some duly authorized member of the police department after approval, and shall specify the day, hour, place and purpose of such parade, procession or open-air public meeting.

Fort Myers, Fla. Ordinance § 86-153(a).

The City has not responded to the merits of plaintiffs' claims as to this ordinance.  Rather, the City asserts that it does not enforce this ordinance, and it did not enforce this ordinance

against plaintiffs, thus rendering the claim moot.  The City's argument is based on the following:  On November 9, 2004, an unrelated group of plaintiffs filed a Complaint in Case No. 2:04-cv-551 challenging this and other City of Fort Myers ordinances under the First Amendment.  On December 13, 2004, the City Council issued Resolution No. 2004-74 abating enforcement of these ordinances until the lawsuit could be evaluated.  (Doc. #28, p. 16).  On December 21, 2004, the undersigned entered a Consent Judgment and Order (Doc. #33, Case No. 2:04-cv-551) at the request of the parties.  This Consent Judgment and Order noted that the City agreed to repeal certain sections of the Parades and Processions ordinance and not to enforce them against plaintiffs "and those similarly situated."  The Court then ordered the City and its employees not to enforce the ordinance against those plaintiffs "and those similarly situated," noting again that the City had agreed to repeal the ordinances.

The City now reports that the ordinance was not repealed. Indeed, in 2006 it was re-promulgated under the current number. The City and its Chief of Police assert that despite its presence on the books, it was not enforced as to plaintiffs in this case. The City has also produced two letters in which it told citizens that a permit was not required.  (Doc. #28).

Under these facts it would be virtually impossible to find the issues moot.  The City told this Court almost seven years ago that

the ordinance would be repealed.  Not only did the City not repeal
the ordinance, it re-enacted it in 2006.  Plaintiffs are not
required to rely upon the City's representations that it will not
enforce the ordinance as to them.  "The whim, self restraint, or
even the well reasoned judgment of a government official cannot
serve as the lone safeguard for First Amendment rights." Florida
Cannabis Action Network, Inc. v. City of Jacksonville, 130 F.Supp.
2d 1358, 1362 (M.D. Fla. 2001).

     After oral argument, the City filed a Notice of Filing (Doc.
#35) attaching a Proposed Emergency Ordinance to be considered by
the City Council on November 7, 2011.  This emergency ordinance
would finally repeal these ordinances.  "Generally when an
ordinance is repealed any challenges to the constitutionality of
that ordinance become moot." Coalition for the Abolition of
Marijuana Prohibition, 219 F.3d at 1310.  If damages are properly
recoverable, however, the case may proceed despite the repeal.  In
this case, plaintiffs seek compensatory damages (Doc. #1, p. 20),
but such monetary damages are precluded as a matter of law in their
facial challenge.  DA Mortg., 486 F.3d at 1260 and cases cited
therein.  A repeal followed by a superceding amendment to an
ordinance usually, Covenant Christian Ministries, Inc. v. City of
Marietta, 654 F.3d 1231, 1239 (11th Cir. 2011), but not always,
Horton v. City of St. Augustine, 272 F.3d 1318, 1326 (11th Cir.
2001)(citing cases), moots a request for injunctive relief.  While

voluntary cessation of conduct by a government agency is entitled to a rebuttable presumption that the objectionable behavior will not recur, Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents, 633 F.3d 1297, 1310 (11th Cir. 2011), the past conduct of the City of Fort Myers regarding this ordinance would certainly test such a presumption.  The Court need not resolve that issue, however, because there is no record evidence that the City repealed the ordinance.

Accordingly, the Court must determine whether plaintiffs have a substantial likelihood of success on the merits as to the constitutionality of this ordinance.  Plaintiffs contend that the subject ordinance is unconstitutional because it is a prior restraint on First Amendment speech.  The Court agrees.

Prior restraints are presumptively unconstitutional and face strict scrutiny.  Burk, 365 F.3d at 1251; United States v. Frandsen, 212 F.3d 1231, 1236-37 (11th Cir. 2000); Church of Scientology Flag Serv. v. City of Clearwater, 2 F.3d 1514, 1547-48 (11th Cir. 1993).  It is clear that a parade or procession on a city street or an open-air public meeting on public property is conduct protected by the First Amendment.  Both streets and public parks are traditional public forums.  Although the ordinance is content-neutral, it does not serve as a valid time, place, and manner restriction.  There has been no showing of a significant governmental interest in requiring a police permit before any

parade or procession on a public street or before any open-air public.   Additionally, there has been no showing that the restriction is narrowly tailored to achieve a significant public interest, or that ample alternative channels for protected expression exist.   As such, the ordinance does not survive strict scrutiny.   Therefore, plaintiffs have demonstrated a substantial likelihood of succeeding on the merits as to the unconstitutionality of this ordinance.

### (c)   Ordinance Section 58-156:

Plaintiffs challenge Ordinance 58-156, entitled the "Park Regulation" Ordinance, as "unconstitutional on its face as an impermissible prior restraint, containing terms which provide for targeted regulation of core political speech while allowing the Recreation Manager to make accommodations by extending park hours for sporting, cultural or civil events." (Doc. #1,  Count One, ¶47).   Plaintiffs also allege that this ordinance is overbroad. (Doc. #1, Count Two).   At oral argument, plaintiffs' counsel identified § 58-156(a) as the specific provision being challenged. This provision states:

> Except for unusual and unforeseen emergencies, parks
> shall be open to the public every day of the year during
> designated hours. The opening and closing hours shall be
> posted for public information.   Normal park hours are
> 6:00 a.m. to 10:30 p.m. unless posted otherwise by the
> recreation manager. Such hours shall be deemed extended
> by the recreation manager as necessary to accommodate
> athletic sports events, or cultural or civic activities.

Fort Myers, Fl., Code of Ordinances § 58-156(a).

-27-

At oral argument, plaintiffs' counsel advised that plaintiffs do not contend a public park has to be open twenty-four hours a day, and were not challenging the hours of operation set forth in the ordinance.  Rather, plaintiffs challenge the portion of the ordinance providing for extended hours, specifically the sentence stating:  "Such hours shall be deemed extended by the recreation manager as necessary to accommodate athletic sports events, or cultural or civic activities."  Plaintiffs argue that this is a content-based provision which gives unbridled discretion to the recreation manager and thus on its face violates the First Amendment.

The City responds that the ordinance is content-neutral because the park hours apply equally to everyone, and the fact that the hours can be extended does not render it content-based.  The City argues that not only has it interpreted the phrase "civic activities" to include plaintiffs' protest activities, but that "civic activities" is interpreted by the City to simply relate to activities by its citizens, and therefore effectively means any activities.

The Court declines to read the ordinance in such a way as to render the phrase used by the City Council to be effectively meaningless.  Murray v. Mariner Health, 994 So. 2d 1051, 1061 (Fla. 2008)("A second relevant rule of statutory construction is that a statutory provision will not be construed in such a way that it

renders meaningless or absurd any other statutory provision.")
Market Co. v. Hoffman, 101 U.S. 112, 115-16 (1879)("It is a
cardinal rule of statutory construction that significance and
effect shall, if possible, be accorded to every word."); see also
United States v. Nordic Village, Inc., 502 U.S. 30, 36 (1992).  The
City has cited no case which has ever interpreted "civic
activities" in an ordinance to mean "any activities."  The City
wants the Court to interpret the sentence as if it was "Such hours
shall be deemed extended by the recreation manager as necessary."
This is not what the City Council wrote, and the City Council
presumably meant something when it restricted the recreation
manager to a necessary accommodation of only "sporting events, or
cultural or civic activities."  The Court finds that the plain
language of this provision requires the recreation manager to
examine the nature of the activity in making a decision to extend
park hours.  As such, this provision is content-based, and
therefore subject to strict scrutiny.

In any event, the last sentence of this provision cannot
withstand either content-based or content-neutral scrutiny.  Under
a strict scrutiny evaluation, there has been no showing of a
compelling governmental interest in restricting the extension of
park hours to only sporting events, cultural activities or civic
activities.  Even if content-neutral, there has been no showing of
a significant governmental interest in restricting the extension of

park hours to only sporting events, cultural activities or civic activities, and no showing that such restriction is narrowly tailored.   The Court therefore concludes that plaintiffs are substantially likely to prevail on their claim that the last sentence of this ordinance is unconstitutional on its face.

The Court need not enjoin enforcement of the entire ordinance when only a portion of that ordinance is likely unconstitutional. The extension of park hours is wholly independent of the other provisions in Ordinance § 58-156(a), and "a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1985).   Additionally, the challenged ordinance contains a severability clause[5], and "[s]everability of a local ordinance is a question of state law."   Covenant Christian Ministries v. City of Marietta, 654 F.3d 1231, 1240 (11th Cir. 2011).   Severance is permissible because "the legislative purpose

---

[5]Fort Myers, Fla. Code of Ordinances § 1-10 provides:

It is hereby declared to be the intention of the city council that the sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code, since the same would have been enacted by the city council without the incorporation in this Code of any such unconstitutional phrase, clause, sentence, paragraph, or section.

expressed in the valid provisions can be accomplished independently of those [provisions] which are void . . . ."  <u>Presbyterian Homes of Synod v. Wood</u>, 297 So. 2d 556, 559 (Fla. 1974).  Plaintiffs do not contest the first part of the ordinance which provides for nightly closure of Fort Myers's City parks.  The general intent of the City Council's desire to close the parks at night will remain accomplished if the provision providing for extensions of park times is severed.  Accordingly, the Court will enjoin the City from enforcing only the last sentence of this ordinance.

> **(d)   Ordinance 58-153(3):**

Plaintiffs allege that ordinance § 58-153 is impermissibly vague on its face (Doc. #1, Count Three).  At oral argument, plaintiffs' counsel identified § 58-153(3) as the specific provision being challenged. Section 58-153(3) states:

> No unauthorized person in a park shall: Set up tents, shacks, or any other temporary shelters for the purpose of overnight camping. No person shall live in a park beyond closing hours in any movable structure or special vehicle to be used or that could be used for such camping purpose, such as a tent, house-trailer, camp-trailer, camp-wagon or the like.

Fort Myers, Fl., Code of Ordinances § 58-153(3).  Plaintiffs argue this ordinance fails to provide notice of what precise conduct it prohibits and authorizes arbitrary and discriminatory enforcement due to its lack of precision.  (Doc. #1, Count Three).

An ordinance is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its

meaning and differ as to its application." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926). A plaintiff asserting that a statute is void for vagueness must show either: (1) the statute fails to give fair notice of wrongdoing; or (2) the statute lacks enforcement standards such that it might lead to arbitrary or discriminatory enforcement. Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972). "[T]he Constitution demands a high level of clarity from a law if it threatens to inhibit the exercise of a constitutionally protected right, such as the right of free speech or religion." Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1329 (11th Cir. 2005). In the context of a facial challenge, the Eleventh Circuit has recently stated:

> In bringing a facial challenge to an ordinance for vagueness, a party "'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Holder v. Humanitarian Law Project, -- U.S. --, 130 S. Ct. 2705, 2719, 177 L. Ed. 2d 355 (2010) (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362 (1982)) . . . If Plaintiffs' own conduct is clearly proscribed by the terms of the ordinance, this "necessarily precludes a finding of facial vagueness." High Ol' Times, Inc. v. Busbee, 673 F.2d 1225, 1228 (11th Cir. 1982).

Catron v. City of St. Petersburg, 658 F.3d 1260(11th Cir. 2011). If the conduct is not clearly proscribed by the terms of the ordinance, the court "must decide whether 'what the ordinance as a whole prohibits . . . in the vast majority of its intended applications' is clear enough." Id., citing Hill v. Colorado, 530 U.S. 703 (2000) (quotations and citations omitted)).

Plaintiffs have not shown that this ordinance is unconstitutionally vague on its face as to the conduct they are challenging.  By the express terms of the ordinance, it is clear to the public that it may not set up tents, shacks, or other temporary shelters to camp in the park overnight, and may not live in the park beyond closing hours in any movable structure or vehicle.  Persons of ordinary intelligence are not left to guess at what conduct is prohibited, and the ordinance does not create the risk of arbitrary application.   Plaintiffs have failed to demonstrate a substantial likelihood of succeeding on their facial attack of this ordinance, and a preliminary injunction as to it will be denied.

### (e)   Ordinance 58-154(6):

Plaintiffs challenge Ordinance 58-154(6) as vague and as violating their liberty interests under the Due Process Clause of the Fourteenth Amendment on its face.   (Doc. #1, Count Four). Section 58-154(6) states that unauthorized persons in a park are prohibited from:

> (6) Loitering and boisterousness.  Sleep or protractedly lounge on the seats, benches, or other areas, or engage in loud, boisterous, threatening, abusive, insulting or indecent language, or engage in any disorderly conduct or behavior tending to a breach of the public peace.

Fort Myers, Fl., Code of Ordinances § 58-154 (6). Plaintiffs argue that this provision is vague because it creates uncertainty as to the type of loitering or boisterous behavior which would be

considered offensive conduct, and which conduct would fall within the "sweep" of the ordinance.  (Doc. #10, p. 18.)   Further, plaintiffs contend that they have liberty interests in lounging on public benches and public places "according to their inclination" and in meeting with others in open air within City limits.  (Doc. #1, Count Four).

In response, defendants contend that a preliminary injunction should be denied because no arrests have been made pursuant to this ordinance, no arrests have been threatened, and plaintiffs have now acquired a permit which allows them to be in the park.  Defendants also argue that the ordinance only applies to "unauthorized persons," and plaintiffs' presence in the park is "authorized" by its permit.  Defendant argues that the request for a preliminary injunction as to this ordinance is therefore moot, plaintiffs lack standing, and the issue is not ripe for review.  Alternatively, defendant contends that any offending language should be severed rather than enjoining the entire ordinance.  In support, defendants provided an affidavit of Mike Viola, Captain of the Fort Myers Police Department.  (Doc. # 42-1.)

The crux of defendant's argument is that because plaintiffs have not been charged with any violations of this ordinance, and because the City does not intend to enforce this ordinance against plaintiff, there is no imminent fear of injury and therefore no actual case or controversy.  This argument is without merit.

Captain Viola's affidavit simply states that, "[d]ue to the issuance of the [permit], enforcement of §58-154(6) is <u>unlikely</u>." (Doc. # 42-1, p. 2)(emphasis added).  Thus, the City has not ruled out enforcement of this ordinance against plaintiffs. Additionally, the City permit is revocable without cause with ten days notice.  As such, the Court finds that there remains a case or controversy which is ripe and not moot for which plaintiffs have standing.

### (1)  Vagueness:

Applying the vagueness principles set forth above, the Court finds that a portion of this ordinance is unconstitutionally vague. While the meaning of sleeping on seats, benches, and other areas is clear, there is no established meaning to "protractedly lounge" which would advise a person of ordinary intelligence when he or she was required to vacate the seat, bench, or other area in a City park.  An "allcases" computer search revealed not a single case where the phrase "protractedly lounge" was ever used.  Because the ordinance fails to define this crucial term, and it is not clear from the ordinance as a whole that the vast majority of its intended application is clear enough, it is likely to be unconstitutionally vague on its face.  <u>Catron v. City of St. Petersburg</u>, 658 F.3d 1260 (11th Cir. 2011); <u>Easy Way of Lee Cnty., Inc. v. Lee Cnty.</u>, 674 So. 2d 863, 866 (Fla. Dist. Ct. App. 2d

Dist. 1996)(county noise ordinance failed to define crucial terms and was therefore vague).

The meanings and application of both "disorderly conduct" and "breach of the public peace" are well established under Florida law. Fla. Stat. § 877.03; K.M.D. v. State, 69 So. 3d 311, 313 n.4 (Fla. Dist. Ct. App. 4th Dist. 2011); C.N. v. State, 49 So. 3d 831, 832 (Fla. Dist. Ct. App. 5th Dist. 2003); Macon v. State, 854 So. 2d 834, 837 n.1 (Fla. 5th DCA 2003). Thus, this portion of the ordinance satisfies notice requirements. On the other hand, "behavior tending to" breach of the peace has no established meaning, and is not comprehensible to persons of ordinary intelligence. Florida interprets it laws in such a way that conduct such as "loud, boisterous, threatening, abusive, insulting or indecent language" are limited by the First Amendment and as such are constitutional. Macon, 854 So. 2d at 837 n.1. In any event, plaintiffs do not assert that their conduct was threatening, abusive, insulting, or indecent.

In sum, the Court finds that plaintiffs are likely to succeed only as to a portion of their challenge to this ordinance. Plaintiffs are likely to succeed as to the provisions which prohibits "protracted lounging" and conduct "tending" towards breach of the public peace. The Court will grant a preliminary injunction as to these portions of the ordinance.

### (2)   Liberty Interests:

"Plaintiffs have a constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public generally . . . . Plaintiffs possess a private liberty interest in lawfully visiting city property that is open to the public . . . ." Catron, 658 F.3d 1260, at *7, 8, 12 (11th Cir. 2011).   "All Florida citizens have a right under the Florida Constitution to 'chat[ ] on a public street,' 'stroll[ ] aimlessly,' and 'saunter down a sidewalk.'" Catron, 658 F.3d at *20, 21, citing State v. J.P., 907 So. 2d 1101, 1113 (Fla. 2004), (quoting Wyche v. State, 619 So. 2d 231, 235 (Fla. 1993)).   This liberty interest does not include sleeping or camping in a public park, Joel, 232 F.3d at 1357, and in any event can be forfeited by "trespass or other violation of the law." Catron, 658 F.3d at *7, 8, citing Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994).   The Court concludes that plaintiffs have not established that they are likely to succeed on their claims to a fundamental right to lounge where, when, and for how long they wish in a public park or to meet in a public park during hours it is closed to the public.   The preliminary injunction as to this ordinance will therefore be denied as to the liberty claims.

## B.   Irreparable Injury

Having determined that plaintiffs have demonstrated a substantial likelihood of succeeding on the merits as to their

constitutional challenges of Ordinances 86-153 and portions of 58-156, and 58-154(6), the Court turns to the remaining factors for the issuance of a preliminary injunction.

"A showing of irreparable injury is the *sine qua non* of injunctive relief." Siegel, 234 F.3d at 1176 (quoting Northeastern Fla. Chapter of Ass'n of General Contractors v. Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotations omitted)). "Regarding irreparable injury, it is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." KH Outdoor, LLC v. Trussville, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (citations and internal punctuation omitted). The nature of the injuries in this case flowing from the portions of the ordinances which the Court has found to be in likely violation of the First Amendment are such that they cannot be cured by the award of monetary damages. The Court finds that plaintiffs have satisfied their burden to show irreparable injury stemming from these ordinances.

## C.   Balance of Injuries, Public Interest

Plaintiffs must also establish that the threatened injury to them outweighs the harm a preliminary injunction may cause to the defendant and that an injunction would not harm or do a disservice to the public interest. Siegel v. LePore, 234 F.3d at 1176. "As noted, even a temporary infringement of First Amendment rights constitutes a serious and substantial injury, and the city has no

-38-

legitimate interest in enforcing an unconstitutional ordinance. For similar reasons, the injunction plainly is not adverse to the public interest. The public has no interest in enforcing an unconstitutional ordinance." KH Outdoor, 458 F.3d at 1272. Both factors favor issuance of a preliminary injunction as to those portions of the ordinances the Court has found to likely violate the First Amendment.

**D.    Bond Requirement**

Plaintiffs contend that because they seek to vindicate constitutional rights they ought not be required to post security as a condition of the preliminary injunction, as otherwise required by Federal Rule of Civil Procedure 65(c). Defendant opposes this request, contending that the City would incur substantial financial costs should the Court enjoin the City from closing Centennial Park from 10:30 through 6:00 a.m. and the City will not be able to recover the additional costs to the taxpayers from plaintiffs.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

> [B]efore a court may issue a preliminary
> injunction, a bond must be posted, but it is
> well-established that "the amount of security
> required by the rule is a matter within the
> discretion of the trial court . . . and the

court may elect to require no security at
all."

Bellsouth Telecomm., Inc. V. MCI Metro Access Transmission Servs.,
LLC, 425 F.3d 964, 971 (11th Cir. 2005) (internal citations
omitted). Given the limited scope of the of the new matters in the
preliminary injunction to be issued, the Court finds it appropriate
to require a nominal $100 bond to be posted.

Accordingly, it is now

**ORDERED:**

Plaintiffs' Motion for a Preliminary Injunction is **GRANTED IN
PART AND DENIED IN PART** as set forth above. A separate preliminary
injunction will be entered.

**DONE AND ORDERED** at Fort Myers, Florida, this ___15th___ day of
November, 2011.

JOHN E. STEELE
United States District Judge

Copies: Counsel of record

-40-